Owen McGivern, J.
In this habeas corpus proceeding, the petitioner is a young girl, presently 16 years of age, and the respondents are the commissioner of welfare of the City of New York, and the superintendent of the New York Foundling Hospital. It appears that during the month of June, 1956, the girl found herself to be pregnant by a neighborhood boy, not of a good history, and in August of that year she was admitted to the foundling shelter. On November 13, 1956 an infant boy was born, and on December 18, 1956, a few days before the girl reached her sixteenth birthday, she executed a written instrument of surrender of her infant, to the commissioner of welfare of the City of New York, in accordance with section 384 of the Social Welfare Law.
The girl now seeks the return of her child, and prays that her instrument of surrender be set aside. After a plenary hearing, the following facts emerge: During her confinement in the foundling hospital her family rarely visited or comforted her. Her mother, who was most sensitive to the girl’s predicament, came infrequently and displayed nothing but recrimination towards her daughter. In fact, the mother’s implacable hostility towards the natural father of the infant in question resulted in his arrest for statutory rape and completely cut off any possibility of a marriage between him and the girl. It seems that this mother, married for many years to an invalid, and having been forced to work in order to preserve her household, had unfortunately become embittered in many of her *964 relationships, particularly with reference to her youngest daughter, the petitioner herein. Yet, she was and is a good woman, iron-willed and well intentioned.
The possibility of adoption by the girl’s sister, Patricia, was discussed during her stay at the shelter, but rejected by the girl. In fact, it was clearly the girl’s wish that the child, when born, be left with the institution for adoption, and this expectation was shared by all in the family. Even after his birth the girl showed little or no interest in the infant, and neither did anyone in her family, with specific reference to both the girl’s mother and sister.
Come December 18, 1956 and the girl signed the instrument of surrender at the department of welfare. The court finds that not the slightest inference of duress or misrepresentation, or any lack of understanding, attended the execution. The girl, in accordance with her own wish and the general expectation of both her family and the authorities, with open eyes and apparently, an untroubled heart, signed the document. Back at the Foundling however, the girl’s mother requested to see the infant, her grandson. Then there started the train of consequences that lead to this proceeding. For once the grandmother saw the infant, and this for the first time, not unnaturally she was deeply affected, and upon returning home translated her remorse to the daughter, the child’s mother, who hitherto had been quite impervious to developments. Shortly thereafter, the girl informed the welfare department and the Foundling that she had changed her mind, and wanted the child returned to her.
On the hearings it was quite manifest that the moving spirit behind the proceedings was the girl’s mother and sister, and not the petitioner herself. The suggested plan for the infant, namely, that the infant and the unwed mother live with the sister, is not acceptable to the court, as it is transparently a post-fabricated plan, with all the satisfactions going first to the grandmother and the sister, the infant’s welfare and the mother’s future being but incidentally considered. This court cannot in effect lend itself to transferring the infant back to an unwed teen-age mother, who must continue with her own schooling before she can be lawfully employed. Particularly, when this mother, of all the parties involved, displays the least interest in the outcome of this proceeding, and has been clearly cajoled into her change of mind by a misguided, domineering mother and a compliant sister, both of whom, previous to the Surrender of the infant, remained aloof and stood off afar. Therefore, the best interests of the infant and of the teen-age *965 unwed mother are fostered by leaving the status quo as is, and by a denial of this writ and petition.
Legalistically also, this is the proper disposition. The surrender was affected in accordance with section 384 of the ,Social Welfare Law, by which the child was properly surrendered to the commissioner of welfare for adoptive purposes. The fact that the surrendering party was an infant does not impair the validity of the act. Subdivision 3 of section 111 of the Domestic Relations Law specifically provides that consent to adoption shall be required ‘ ‘ Of the mother, whether adult or infant, of a child born out of wedlock ’ ’. The efficacy of a minor’s surrender had been recognized by New York, even before the Legislature spoke (cf. Matter of Presler, 171 Misc. 559). And when an authorized agency is involved, the utter finality of surrender, barring fraud, mistake, over-reaching or misrepresentation, has become fixed in our law (cf. People ex rel. Harris v. Commissioner of Welfare, 188 Misc. 919. See, also, People ex rel. Grament v. Free Synagogue Child Adoption Comm., 194 Misc. 332, 335-336). As was said in this latter case by Mr. Justice Botéis, “ The statutes do establish a procedure for the adoption of a child surrendered to an authorized agency different from that prescribed for a child surrendered to an individual. Subject to certain limitations, the consent to adoption of the parents of a child born in wedlock is required (Domestic Relations Law § 111, subd. 2); but such consent is not required of parents who have surrendered their child to an authorized agency for adoption (§ 111, subd. 4). The consent only of the agency is necessary. Great, usually decisive, consideration is given in adoption proceedings to the wishes of parents who have surrendered infants to individuals. Little, if any, weight is attached to the status of parenthood in adoption proceedings after surrender to an authorized agency.”
The writ is dismissed.