THE PEOPLE OF THE STATE OF NEW YORK ex rel. JANE DOE, Mother on Behalf of JOHN DOE, an Infant, Respondent,* ·v. JANE D. EDWARDS et al., Appellants.

First Department, December 5, 1968.

*John J. Tigue, Jr.,* of counsel (*Roy L. Reardon* with him on the brief; *Simpson Thacher & Bartlett,* attorneys), for appellants.

*Gerald Mann* of counsel (*The Legal Aid Society*), for respondent.

McGIVERN, J. The respondent, Spence-Chapin Adoption Service, appeals from a judgment which sustained a writ of habeas corpus obtained by the natural mother of the subject infant and decreed that custody of the infant be awarded the mother.

---

* Names used herein are fictitious for purposes of publication.

Spence-Chapin is an agency authorized under the statutes to receive the absolute surrender of children for adoption. The relator, the unwed mother of an illegitimate child, had signed a formal writing surrendering the child. At the time of surrender, the mother was 24 years of age. The pertinent statutes, sections 383 and 384 of the Social Services Law, read together, declare that a parent who commits her child to an authorized agency by a voluntary, duly executed and acknowledged surrender instrument " shall not be entitled to the custody " of the child except on a court order " determining that the interest of such child will be promoted thereby and that such parent is fit, competent and able to duly maintain, support and educate such child."

The court below has found that at the time of surrender, the mother did not act of her own free will and that the best interests of the child dictate a return to the mother. We cannot agree.

The record does not sustain these conclusions. Quite the reverse: Prior to the birth of the infant on June 22, 1967, the unwed mother had communicated her wishes to Spence-Chapin and made known her plans to place the child out for adoption, in which the putative father concurred. Five days after birth, the infant was physically transferred to the agency. On July 17, 1967, the mother, both her parents, and the putative father, all attended the agency and there she executed the formal document of surrender, in accordance with section 384 of the Social Services Law, authorizing Spence-Chapin to place the child for adoption. The deed was done. It cannot be undone unless judicial scrutiny can find coercion, which we cannot find, or that the best interests of the child dictate a return. And that too we cannot find.

On March 8, 1968, after eight months of foster care, the infant was placed with foster parents for adoption. Since that time, the infant has been in the custody of foster parents.

First, we can find no evidence of coercion, duress, lack of understanding or misrepresentation attendant upon the signing of the surrender document. She was a woman, then 24 years of age, surrounded by those closest to her. That she was not at that moment completely untroubled we understand and view her decision with poignant solicitude. But she was carrying out her desire to strike out anew in life, unencumbered by an illegitimate child. Indeed, her course otherwise would have been difficult. She was without funds. The putative father supported the surrender. In her testimony she says her act was voluntary, and we cannot find anything in the record, singly or collectively to

support a conclusion she was not acting as a free agent and so her surrender should be voided. In the absence of any factors rendering the surrender voidable, as to an adoptive agency, it is final, even as to the natural mother of the child (cf. *People ex rel. Skokas* v. *McCarthy*, 7 Misc 2d 963 [Sup. Ct., N. Y. County, 1957]; *People ex rel. Harris* v. *Commissioner of Welfare*, 188 Misc. 919 [Sup. Ct., N. Y. County, 1947]; *People ex rel. Gramet* v. *Free Synagogue Child Adoption Committee*, 194 Misc. 332, app. dsmd. 275 App. Div. 823 [1st Dept., 1949]).

Secondly, we do not conclude the best interests of the child demand a return. Nearly a year and a half have gone by since the birth of the child, and since the transfer to the agency, shortly after birth, petitioner has not seen the infant. Sporadic changes of heart on the mother's part do not enhance the interests of the child. Nor are they sufficient. (*People ex rel. Anonymous* v. *New York Foundling Hosp.*, 17 A D 2d 122, 123.) Actually, her periodic changes in attitude prevent any conclusion that she was ever a mother of unflinching, steadfast determination to retain the infant. And there has been no dramatic change or upturn in her circumstances. She is still unmarried. She still has no resources. Her only plans envisage bringing the infant to the home of her parents, both of whom work and one of whom, her father, until recently, was adamant against the suggestion. Although he did not testify, the record indicates he long held a fixation against her returning to the parental home and community as an unwed mother with a child under the bar sinister. As against the present well-being of the infant, we cannot see and we do not find that a return will ultimately be promotive of the best interests of the infant.

Since the record does not sustain a conclusion that the surrender was achieved by improper means or that it was involuntary, or that the best interests of the child will be furthered by a return to the mother, we are constrained to direct that the child remain in his present custody. (*People ex rel. Anonymous* v. *New York Foundling Hosp., supra.*)

The judgment should be reversed, on the law and on the facts, without costs and without disbursements, and the writ dismissed.

STEVENS, J. P., STEUER, TILZER and McNALLY, JJ., concur.

Order and judgment (one paper) entered on September 25, 1968, unanimously reversed, on the law and on the facts, without costs and without disbursements, and the writ dismissed.