In the Matter of MARY ROE,* Appellant, *v.* NEW YORK FOUNDLING HOSPITAL, Respondent.

First Department, November 20, 1969.

*Philip F. Solomon* of counsel (*Solomon & Solomon,* attorneys), for appellant.

*Thomas R. Esposito* of counsel (*William P. Ford* with him on the brief; *Mudge Rose Guthrie & Alexander,* attorneys), for respondent.

*Per Curiam.* Petitioner appeals from an order of the Supreme Court which denied her application for custody of her infant son.

We agree with the finding of the trial court that the petitioner knowingly and voluntarily, with full understanding of its meaning, executed a surrender instrument relinquishing all parental rights to her out-of-wedlock child and consenting to his adoption. Such an absolute surrender, nevertheless, as the court recognized, did not accomplish an irrevocable commitment foreclosing resumption of custody in the surrendering parent. If the parent established by convincing evidence that the best interests of the child compelled the court to undo what she had done, custody of the boy would again be entrusted to his mother. (Social Services Law, §§ 383, 384; Domestic Relations Law, § 111; *People ex rel. Doe* v. *Edwards,* 31 A D 2d 64, affd. 23 N Y 2d 925; *People ex rel. Anonymous* v. *New York Foundling Hosp.,* 17 A D 2d 122, affd. 12 N Y 2d 863.)

The trial court found the petitioner to be an intelligent, mature woman, 30 years of age, with a good educational and family back-

* Name used herein is fictitious for purposes of publication.

ground and observed that this situation represented the only moral lapse in her life. Although petitioner asserted her love for her child and assured the Justice that she would be a good mother, the court had difficulty in concluding nonetheless whether her wish to regain custody " comes solely from her own unshakable desire to recover her child or is due to the fact that the putative father and her parents now have agreed to the child's return ". In the circumstances and considering the present home life being afforded the infant by the prospective adoptive parents, the Trial Justice decided that the best interests of the child would not be promoted by his return to his mother. Although fully cognizant of the impact of his decision upon the petitioner, the court believed that the result was dictated " in accordance with my conscience." The Justice was influenced by the mother's sporadic changes of mind concerning adoption of the child. Her irresolution, he believed, did not portend well for the infant.

The mother's change of mind, of course, in and of itself is not sufficient to either grant or deny her custody. On the other hand, as Judge BREITEL had occasion to say but recently, " the change of mind by a natural parent is not an evil thing. Instead, the change of mind is to be accorded great sympathy, and, in a proper case, encouragement and favorable action." (*People ex rel. Anonymous* v. *New York Foundling Hosp.*, 17 A D 2d 122, 125, *supra*.) Whether the petitioner's change of mind should be accorded favorable action, we cannot say on the present record.

Moreover, while undoubtedly the boy is presently being afforded a good family life, such factor should be considered in light of the fact that the natural mother has a right to custody superior to that of the prospective adoptive parents. " In no case may a contest between a parent and a nonparent resolve itself into ' a simple factual issue as to which [affords] the better surroundings, or as to which party is better equipped to raise the child.' * * * And that is true even if the nonparent initially acquired custody of the child with the parent's consent." (*People ex rel. Kropp* v. *Shepsky*, 305 N. Y. 465, 469.)

The petitioner's superior right to custody must nevertheless be supported by evidence that she is " fit, competent and able to duly maintain, support and educate such child " (Social Services Law, § 383). The record before us is lacking in this fundamental support and we would request that these deficiencies be supplied upon the new trial. While many avenues of inquiry suggest themselves, since petitioner is living with her parents and plans to raise her boy in their home, testimony might be elicited from her father as to his financial condition and as to his willingness

to receive his grandson into his home. Petitioner's own employment should be disclosed, the duration of her position, her hours of work and the salary she receives. Inasmuch as the putative father, a gentleman of the medical profession, originally refused to contribute to the support of the child and in fact urged surrender of the boy for adoption, the nebulous agreement alluded to by the petitioner concerning his setting up of a trust fund for the infant should be clarified. If the existence and amount of the fund is not established, the nature and description of the father's practice would be pertinent to enable one to judge of his ability to meet his commitment. Evidence as to these matters and to other relevant factors should be adduced to buttress petitioner's claim to her child.

Accordingly, inasmuch as we find no duress, lack of understanding or misrepresentation attendant upon the signing of the surrender agreement we reverse on the law and the facts, without costs and disbursements, and remand and direct an expeditious new trial on the issue whether the best interests of the child dictate his return to petitioner as one fit, competent and able to support, educate and care for him.

EAGER, J. P., CAPOZZOLI, TILZER, NUNEZ and McNALLY, JJ., concur.

Order entered March 19, 1969, unanimously reversed, on the law and the facts, without costs and without disbursements, and the matter remanded to Supreme Court, New York County, and an expeditious new trial is directed on the issue whether the best interests of the child dictate his return to petitioner as one fit, competent and able to support, educate and care for him.