In the Matter of T. W. C. (ANONYMOUS). In the Matter of ANONYMOUS.—In a private-placement adoption proceeding, the mother of the child in question appeals from a decree of the Surrogate's Court, Nassau County, dated January 13, 1975, which, after a hearing, dismissed her application to revoke her consent to the adoption. Decree affirmed, without costs. No opinion. Hopkins, Acting P. J., Christ and Brennan, JJ., concur; Cohalan and Munder, JJ., dissent and vote to reverse the decree and to return the child to its natural mother, with the following memorandum: In August of 1972 petitioner bore a child out of wedlock. Despite a series of misfortunes she managed to support the child for its first 14 months of existence, except for a short period when the baby was in a foster home. However, in October of 1973 this infant unwed mother, deserted by her paramour, disowned by her father, estranged from her mother and destitute of funds, was prevailed upon to surrender her child to a private family, for adoption. On October 30, the day prior to her scheduled appearance before the Surrogate, she telephoned the attorney for the adoptive parents and informed him that she "wasn't sure about signing papers." He conceded that she had made the statement. Nevertheless, on the following day she did appear before the Surrogate in his Chambers. The same attorney was present. On that occasion painstaking efforts were made by the Surrogate to explain all her rights to her and to impress upon her the irrevocability of her action if a valid consent were signed. Unquestionably, the Surrogate acted in good faith and in attempted compliance with section 115-b of the Domestic Relations Law. (Note: the section became effective on August 28, 1972 [L. 1972, ch 639, § 4].) In pertinent part it reads: "1. If a duly executed and acknowledged consent to a private-placement adoption shall so recite, no action or proceeding may be maintained by the consenting parent for the custody of the child to be adopted, and no such consent shall be revoked by such parent if: * * * (c) The consent was executed or acknowledged before a judge or surrogate of the court in which the adoption proceeding is to be commenced and such consent states that it shall become irrevocable upon such execution or acknowledgment; * * * 3.(a) A parent may revoke his consent to adoption only if it has not become irrevocable under the provisions of this section and only by giving notice, in writing, of such action to

the court in which the adoption proceeding has been or is to be commenced. Such notice shall set forth the address of the parent and may, in addition, set forth the name and address of the attorney for the parent." Unfortunately, errors of significance occurred at the meeting in the Surrogate's Chambers on October 31, 1973, which, in our view, vitiated the "irrevocable" consent signed and acknowledged by the natural mother. (1) The Surrogate used a form of questionnaire, on which appeared the legend "Form revised 6-3-70", which predated section 115-b of the Domestic Relations Law and was rendered obsolete by it. The third of five written questions on the form reads: "Question: Do you realize that, after the final decree of adoption is signed, you will have nothing further to say in regard to the child?" Her answer was "Yes." As of this writing, the final decree of adoption has not been signed. The latest development in the proceeding is the decree of the Surrogate dated January 13, 1975, dismissing the application of the natural mother to invalidate her consent. This was done after the hearing ordered by the Appellate Division. The dismissal was on the ground that the consent given is irrevocable. The appeal is from this decree. From the tenor of the above-mentioned third question, it is fair to assume the mother inferred that until a final decree were signed she could revoke her consent. (2) The "waiver and consent" form states: "[the mother] the undersigned, *being of full age"* (bracketed matter and emphasis added). According to the record she was born on February 24, 1953. She was, therefore, 20 years and 8 months old when she executed the document on October 31, 1973. (Note: The statute reducing the age of majority from 21 to 18 did not become effective until September 1, 1974.) (3) The acknowledgment on the same "waiver and consent" form includes the fact that the mother appeared before the Surrogate and that she was "to me [the Surrogate] known and known to me on the oath of * * *, attorney" (matter in brackets added). From this it is not unfair to assume that the attorney was representing her—to her detriment—while he was being paid to represent the adoptive parents. If so, it was a conflict of interest which should enure to her benefit. In fact, she was asked at the hearing on September 5, 1974: "Q Did you have an attorney representing you when you went in the next day [October 31, 1973] to sign the papers?" (Matter in brackets added.) She answered: "A Mr." (the attorney named in the acknowledgment to the "waiver and consent" form). The following question and answer next appear in the stenographer's transcript of the hearing: "Q Did you have your own attorney representing you? A No." (4) The rights of infants are so zealously and jealously protected by the Legislature and the Judiciary—as reflected in numerous statutes and in case law—that the failure to insist on legal representation in a proceeding such as this is an anomaly that cries out for correction. If at the time the mother signed the consent she was: (1) settling an infant's compromise; (2) a distributee in a probate proceeding; (3) a grantee-mortgagor in a real estate transaction; or (4) a defendant in an action or proceeding, to give a few examples, she could not, alone, have acted on her own behalf. Representation would have been provided for her, willy-nilly her acquiescence or dissent. The examples suggested pale into insignificance when compared with the reluctant relinquishment, the permanent surrender, of one's own flesh and blood. Although not at issue in this appeal, undisputed testimony at the hearing disclosed that the mother has become reconciled with her parents and is welcome to return to their home with her child. Since this is a matter of first appellate impression, we have not dealt with cases decided prior to the enactment of the new statute (Domestic Relations Law, § 115-b). We note, however, as did Judge Desmond

in *Matter of Eaton* (305 NY 162, 165), that "On few questions is decisional law so clear cut as on this: that adoption, and the abrogation thereof, is, in New York solely the creature of, and regulated by, statute Law" (citing cases). That being so, the statute at bar must be strictly complied with.