Edward M. Horey, S.
The proceeding before the court is one for a private placement adoption of an infant girl. The *771 proceeding is brought under the provisions of title III of article VII of the Domestic Relations Law. The infant for adoption was born out of wedlock and is currently three months of age.
The natural mother of the infant for adoption is herself only 14 years of age.
Accompanying the petition for adoption is the printed official form 2-B "Agreement of Adoption and Consent”. This form has been signed by the adoptive mother and adoptive father. As submitted it was acknowledged before a notary public. Subsequently, it was reacknowledged by the adopting parents before the Surrogate upon their initial appearance in court. The agreement of adoption and consent has never been signed by the natural mother.
What has been submitted to the court as a consent is a separate home-drafted instrument denominated "Surrender and Consent of Natural Mother”. Excluding the names used therein, the instrument provides as follows: "[Name], being the natural mother of a child born out of wedlock on the 22nd day of July, 1975, hereby surrenders custody of said infant to her attorney, [name], for placement in an adoptive home, and does hereby consent that said child be adopted. This consent shall become irrevocable upon the execution hereof, and no action or proceeding will be maintained by the undersigned consenting parent for the custody of the child herein to be adopted, nor shall the consent be revoked by such parent.”
The instrument has been signed by the infant natural mother and has been acknowledged before a notary public.
Also submitted is another separately typed instrument entitled "Consent of Maternal Grandparents”. This instrument has been executed by the parents of the natural mother of the child placed for adoption. It has been acknowledged before a notary public. It recites that they are conversant with the wishes of their daughter and "do hereby consent to the surrender of the custody of said newborn infant, and consent that said infant be adopted and that the surrender and consent signed by my daughter was signed by her with full understanding of what she was doing and that she signed the same by her own free will without coercion or representation of any kind”.
An initial appearance of the adopting parents and the child for adoption before the court has been completed. The infant mother has not appeared. From the proceedings had to date it *772 appears that the infant for adoption was delivered from the hospital at which it was born to an attorney purportedly representing the infant natural mother. The attorney in turn delivered the infant to the adopting parents. A different attorney now appears for the adoptive parents.
If the court followed the provisions contained in subdivision 3 of section 115 of the Domestic Relations Law, a personal appearance by the natural mother as "a person whose consent is required” would be scheduled. Considerations of the propriety of an appearance in person by the infant mother, of jurisdiction and of consent have given the court cause to pause and reflect before proceeding. The court reviews those considerations in order.
Section 111 of the Domestic Relations Law is entitled "Whose consent required”. It provides for consent in adoption proceedings in part as follows: "Subject to the limitations hereinafter set forth consent to adoption shall be required as follows * * * 3. Of the mother, whether adult or infant, of a child born out of wedlock”. (Italics added.) .
Clearly the cited statute requires the personal consent of the infant mother of a child born out of wedlock.
A detailed examination of all other provisions of the Domestic Relations Law referable to adoption discloses nothing to shed light on the procedural aspect of how and by whom the required consent of the infant mother is to be presented to the court.
It has been suggested that in the light of the statutory provisions of subdivision 3 of section 111 of the Domestic Relations Law, and the absence of any other provision in that law, the required statutory consent of the infant mother to the adoption is properly made in court by the personal appearance of the infant. This court does not agree with this suggestion.
The courts of this State have a history of zealously guarding the interest of infants. This is borne out of a recognition of their immaturity and a judicial appreciation of their inability to adequately protect their interests. Representation of infants by adults as guardians ad litem is not an exception, but the commonplace requirement in our jurisprudence. We see it daily in the prosecution and defense of negligence actions, in real property transactions, in probate proceedings, in actions concerning commercial enterprises. In fact, other than in the presently considered area of adoption this court cannot recall *773 an exception to the requirement that the interest of an infant be protected by an adult guardian in judicial proceedings.
This court finds something fundamentally wrong with a jurisprudence that requires adult representation for an infant girl seeking to contract away her doll, but not her baby. Justices Cohalan and Munder in their dissent in Matter of T. W C (Anonymous) (48 AD2d 893, 894) properly termed this void "an anomaly that cries out for correction.”
Common sense alone dictates that a 14-year-old infant mother needs counsel and guidance on the legal aspects of an issue as important as the adoption of her baby. This court is not going to proceed until she receives it. The only issue to this court is the proper basis on which to provide it.
Authority exists under the CPLR for a court in which "an action is triable”, in the exercise of discretion, and on its own motion, to appoint a guardian ad litem whenever deemed necessary. (CPLR 1202, subd [a].) No procedure being specifically provided in the SCPA, or in the Family Court Act to the contrary, it would appear that the cited provision of the CPLR (CPLR 1202, subd [a]) would be applicable in either court. (See SCPA 102; Family Ct Act, § 164.) Even if an adoption proceeding might properly be considered an action for the purpose of the statute, the appointment of a guardian ad litem for infants in adoption proceedings should not be a matter of judicial grace and favor, but rather a statutory requirement. The Domestic Relations Law should be amended to provide for it, to the end that it would be applicable regardless of the court in which the adoption is sought.
For reasons next set forth, this court is of the opinion that in the instant proceeding the appointment of a guardian ad litem is not only a statutory, but a jurisdictional requirement.
In that connection, it is to be recalled that adoption proceedings did not exist in the common law. Their origin is founded in the Roman law. (Matter of Livingston, 151 App Div 1.) They enter our jurisprudence solely by statutory enactment. This w;as pointed out in Matter of Eaton (305 NY 162, 165) where the Court of Appeals stated: "On few questions is decisional law so clear cut as on this: that adoption, and the abrogation thereof, is, in New York, solely the creature of, and regulated by, statute law”.
Here, the adoption in issue is brought in the Surrogate’s Court and not the Family Court. Treating considerations of proper appearance and jurisdiction, this fact is significant. In *774 contrast to the Family Court, the manner in which infants must appear in Surrogate’s Court is particularly provided by statute. SCPA 402 provides that an infant may only appear in Surrogate’s Court by a guardian of the property, or by a guardian ad litem. In contrast to the provisions under the CPLR, the guardian ad litem under the SCPA must be an attorney. (Cf. CPLR 1202; SCPA 404.)
Since adoption procedures are wholly statutory, it is fundamental that statutory prerequisites of jurisdiction must exist in order to authorize a court to act. As the Supreme Court of Wisconsin noted in treating a similar problem: " 'While there is an increasing disposition on the part of courts to place fair and reasonable construction upon statutes and proceedings relating to the adoption of children so that mere irregularities of procedure may not defeat the beneficent purposes of the institution of adoption, plain jurisdictional requirements must be observed. ’ ” (Matter of Adoption of Morrison, 260 Wis 50, 66.)
The purpose of appointing a guardian ad litem in this proceeding is not merely to satisfy an obvious need. The primary purpose is to meet those statutory requirements for an appearance of an infant in Surrogate’s Court imposed by SCPA 402. Such an appointment will meet jurisdictional requirements of that statute because it will provide for an interested infant a qualified adult representative of sufficient status that will authorize the court to make a determination "binding” upon such infant. (See SCPA 406.) The failure to appoint a guardian ad litem would be a jurisdictional omission and would render a decree entered in the proceedings voidable on the part of the infant when she attained majority. (25 Carmody-Wait 2d, NY Practice, § 149:238, citing Matter of Becker, 28 Hun 207; Matter of Donlon, 66 Hun 199; Matter of Jones, 54 Misc 202; Matter of Jaffe, 165 Misc 407; Matter of Irland, 72 NYS2d 248.) The recent heartrending decisions stemming from voidable adoption procedures in this State provide a sufficient caution to avoid repetition at all costs.
This court holds that absent a guardian of the property, the appointment of a guardian ad litem for an infant mother in adoption proceedings in Surrogate’s Court is a jurisdictional requirement. Accordingly, by separate order, this court will appoint a qualified attorney as guardian ad litem in this proceeding.
The functions of the guardian ad litem, when appointed, *775 will be to file an appearance on behalf of the infant mother and take such steps, with diligence, as are deemed necessary to represent and protect her interest. As an officer of the court, the guardian ad litem will investigate the circumstances attending the adoption and file a report with his recommendations. These are the statutory and usual duties of a guardian ad litem. (SCPA 404, subd 1; 25 Carmody-Wait 2d, NY Practice, § 149:232, p 221 et seq.) In view of the present status of the New York statute, subdivision 3 of section 111 of the Domestic Relations Law, which requires the personal consent of the infant mother, the consent of the guardian ad litem to the adoption will not be necessary. Note is made, however, that in some jurisdictions the consent of the guardian ad litem has been made a statutory requirement. (See 2 CJS, Adoption of Persons, § 54, p 471 et seq.) The advisability of continuing or changing such provision in the adoption laws of this State is, of course, one for legislative determination. Under the present statute, the required consent is that of the natural mother alone. Under the present statute also, it is the court that is the sole arbiter of approving or disapproving an adoption. The report of the guardian ad litem, coupled with facts developed in the adoption proceeding, supplemented with a report of an appropriate investigative agency should supply a sufficient basis for an appropriate determination.
The decisions reached in Matter of Presler (171 Misc 559) and in People ex rel. Skokas v McCarthy (7 Misc 2d 963) are not contrary to those reached here. In each of those cases the court considered the question of whether an infant mother could effect a surrender of a child born out of wedlock to an authorized agency. The decision reached was that it was within the power of the Legislature to remove the disability of a minor to contract and that the Legislature had removed that disability in the instance when the infant sought to contract with an authorized agency for the surrender of her child. The question of appearance of an infant in an action or judicial proceeding was not involved. Here, it is.
Turning to a consideration of the instrument filed by the infant mother, it is noted that it first recites a surrender of custody to her attorney. It then recites a consent "that said child be adopted”.
This document is not legally sufficient to constitute a consent to adoption under section 111 of the Domestic Relations Law for the following reasons:
*776 The instrument does not contain a consent by the natural mother to the adoption which is presented to the court for approval. Court approval of adoptions generally or judicial sanction of the concept of adoption is not what is presented to the court for decision. Thus, they are not the matters to which the mother must acquiesce. The court holds that the consent required by section 111 of the Domestic Relations Law is a consent to a particular adoption by the particularly named adopting parents recited in the petition for adoption. The instrument presented does not consent to that adoption. Accordingly, it is legally insufficient.
Further, the surrender of the baby to the attorney for the purpose of adoption does not avoid the necessity of the mother’s consent. Section 111 of the Domestic Relations Law does provide for an exception to the requirement of a mother’s consent in an instance where the child has been surrendered to an authorized agency for the purpose of adoption. Section 113 of the Domestic Relations Law provides that an authorized agency may consent to the adoption of a minor in its lawful custody. However, the attorney is not an authorized agency under the Social Services Law (see Social Services Law, § 371, subd 10) and thus, the attorney’s consent to the adoption which has not been presented to the court would be insufficient if it were. The inadequacy of a mother’s consent to adoption on facts identical to those presented in this proceeding was determined by the Appellate Division, First Department, in an opinion by Van Voorhis, J., in 1948. (See People ex rel. Hydock v Greenberg, 273 App Div 710.) The court holds that the consent of the natural mother is legally insufficient and the consent of the grandparents is informative only. A new consent of the infant mother is required.
A recent opinion (Jan. 9, 1975) of the Attorney-General made upon request of the Board of Social Welfare of the State of New York and circulated to all Surrogate Courts in the State seems particularly relevant to the adoption in issue. There the Attorney-General held that the activities of an attorney in securing children through personal contacts with hospitals and doctors and arranging for their adoption constituted a "placing out” of the infants within the meaning of subdivision 12 of section 371 of the Social Services Law. Since the attorney was neither an authorized agency as defined in section 371 (subd 10, par [a]) of the Social Services Law, nor one of the persons enumerated in section 371 (subd 10, par [b]) *777 of that law, his conduct was held to violate subdivision 2 of section 374 of the Social Services Law.
Relevant also is the motivation which leads attorneys to lend themselves to questionable conduct in private placement adoptions. In the opinion of the court, the principal cause is not financial gain, but acquiescence and subservience to the desire of the adopting parents to remain anonymous. Fear of future interference in the life of the adoptive child and adoptive parents is the root cause of the problem. In an attempt to allay this fear and accommodate the desire of the adopting parents to remain unknown, attorneys continue practices of which the instant proceeding is only an example. Folding the agreement of adoption and consent, or placing their hands over the consent form to the end that the names of the adopting parents are not disclosed are other cruder devices sought to be employed.
Anonymity of adopting parents can be had in an agency adoption. There, the agency and not the parent may give the required consent. The attempts of attorneys to convert this facet of an agency adoption to a private placement adoption is as improper as it is recurring. More important, such attempts are a disservice to the client and are counterproductive because they leave the consent to adoption which is secured subject to attack. The importance that the court attaches to having adoptions final when completed and free from attack and controversy is what has prompted this court to discuss the issue involved at such length. Clearly, the energy and ingenuity of attorneys that is spent in attempts to cloak the identity of adopting parents in secrecy would be better expended in attempts to have the adoption statutes amended.
The adoption will proceed in accordance with the decisions which have been reached.