Nanette Dembitz, J.
This proceeding poses an issue of parent — child rights which has not heretofore been determined in the stark form here presented, namely: when there are extraordinary circumstances and a child’s adoption is without question in his best interests, has he a right to a court authorization of the adoption, regardless of the possessory claim of his biological parent? Based on developments in legal and constitutional principles, this court holds that Roy, the child herein, has such a right and that it must be recognized in the instant proceeding by issuance of a court order permit *36 ting his adoption. There is no issue in this case of Roy’s physical custody. His biological mother is not seeking his return to her; her claim is that she can maintain her title to him — that she can prevent his adoption and the termination of her right to call herself his parent.
This proceeding was brought by the Catholic Home Bureau under the permanent neglect statute (Family Ct Act, art 6) for the purpose of enabling Roy’s foster parents to adopt him. The statute provides that the possessory claim of a biological parent can be terminated after a year of foster care if the foster care agency has made diligent efforts to strengthen the parent-child relationship and the parent has nevertheless failed to maintain substantial and continuous contact with the child. There is a dispute between the agency and the respondent mother over its efforts and her contacts (the agency’s records showing that until visitation was terminated in 1975 she and the child had had nine visits over a period of 13 years). Because of the extraordinary circumstances of this case, the court finds it unnecessary to resolve this protracted dispute, involving records and recollections from the years 1962 to 1975.
The uncontroverted and incontrovertible circumstances are as follows: Roy, now 16 years old, has been living with his foster parents for almost 15 years (since May, 1962), having been placed in foster care by this court a few days before his first birthday as a result of a finding of parental neglect. Roy has developed with his foster family into a well-educated, well-motivated, well-balanced youth. He completely identifies himself with it as his family, not only regarding his foster parents as his permanent parents but their biological children as his older siblings, proudly viewing the latter as his career models. Roy is strongly opposed to and fearsome of, any contact or connection with his biological family. He fervently desires adoption by his foster parents and there is no likelihood of a change in his feelings and views, which are well based. Because his foster care status causes him uncertainty and anxiety about his identity and future, his adoption now is in his best interests, rather than forcing him to wait until he is 18 when he has the statutory right to consent to his own adoption without court order.
These circumstances, strongly urged by the Legal Aid Society attorney appointed to represent Roy’s interests as a Law Guardian, were confirmed in an interview held by the court in *37 the presence of all attorneys, all of whom were given the opportunity to pose questions for him. Roy’s desire is not of course determinative, but under the circumstances it is a weighty factor in this court’s determination that adoption is unequivocally in his best interests.
THE CHILD’S RIGHT TO CONSIDERATION OF HIS BEST INTERESTS
As the court pointed out in Matter of Bennett v Jeffreys (40 NY2d 543, 546), "the best interest of the child has always been regarded as superior to the right of parental custody.” Respondent correctly observes that the issue in Bennett concerned only a child’s physical custody rather than his adoption. However, as Chief Judge Breitel’s dicta in Bennett indicates, the same ultimate principle applies to adoption.
Thus, in People ex rel. Scarpetta v Spence-Chapin Adoption Serv. (28 NY2d 185, 192, 194), where the question determinative of physical custody was whether an adoption should be permitted, the court indicated that the "sole issue” was whether "the interest of the child will be promoted” by the adoption. To the extent that previous cases both of simple custody or adoptive custody had referred to a superior right of a parent as against a nonparent, these statements in perspective merely meant that a parent’s care was initially assumed to be in the child’s best interest (see Scarpetta, supra 28 NY2d at p 192). "[T]he law presumes that it is in the child’s best interests that he be raised by his natural parents”, but the presumption can of course be overcome; "it has never been held or suggested that the child’s welfare may ever be forgotten”. (People ex rel. Anonymous v Anonymous, 10 NY2d 332, 335; see also, Matter of Roe v New York Foundling Hosp., 33 AD2d 83, 85; People ex rel. Doe v Edwards, 31 AD2d 64, 65-66.) Adhering to this principle, the Court of Appeals has pointed out in proceedings brought under the Family Court Act such as the instant one that "the 'best interest’ of the child [is] the pivotal consideration underlying all of these proceedings”. (Matter of Orlando F., 40 NY2d 103, 111.)
Bennett held that before a court can consider whether a child’s best interests will be served by a nonparent’s custody, a specified misfeasance or nonfeasance by the biological parent or "like extraordinary circumstances” must be shown (40 NY2d at p 544). A fortiori under Bennett, this rule applies to adoption. However, the requirement of extraordinary circumstances as a condition precedent does not aid respondent *38 herein. For, "disruption of custody over an extended period of time” was the extraordinary circumstance that in Bennett was held to trigger the best interest rule (40 NY2d at p 546); that circumstance is here present to an even greater extent than in Bennett.
Coming then to Roy’s best interests, the facts completely negate any assumption or presumption that they are served by the respondent mother’s title to him, regardless of how strong the presumption in her favor may be. Compare Bennett (40 NY2d at p 553, Fuchsberg, J., concurring opn) stating that when there is "a secure, stable and continuing parent-child relationship with a third party who has become the psychological parent, there comes a point where the 'rebuttable presumption’ * * * to favor the natural parent, disappears, as evidentiary presumptions usually do in the face of facts.”
CONSTITUTIONAL GUARANTEE OF JUDICIAL CONCERN FOR child’s BEST INTEREST
As Bennett points out, the rule that the best interest of the child must be the ultimate determinant in all parent-child issues, is not only rooted in the common law of this State but has constitutional underpinning. (40 NY2d, at p 546 and decisions of (US Sup Ct there cited; see, also, Planned Parenthood v Danforth, — US-, 96 S Ct 2831, 2843 [followed in Guste v Jackson, — US-, 97 S Ct 657], holding unconstitutional a State law that conditioned the right of a female under 18 to an abortion on parental consent because "Minors as well as adults * * * possess constitutional rights”; Matter of Organization of Foster Families for Equality and Reform v Dumpson, 418 F Supp, 277, 282, pending US Sup Ct § 76180 O.T. 1976, holding that a child is entitled to a hearing before he can be removed from a foster home because "children are 'persons’ within the meaning of the Fourteenth Amendment whose rights are entitled to protection against state abridgement”; Wisconsin v Yoder, 406 US 205, 242-245, Douglas, J., dissenting in part; Matter of Malpica-Orsini, 36 NY2d 568, 575 ["The welfare of a child is a legitimate State interest and the State had a wide range of power for limiting parental freedom and authority in matters affecting the child’s welfare”]; cf. People v Scott, D., 34 NY2d 483, 488.)
*39 For this court to refuse to consider the child’s best interest because of an adult’s title to him, albeit a biological parent’s, seemingly would be unconstitutional. To preclude a person by virtue of his birth from a benefit — from a measure promoting his interests — would be an anomaly in constitutional law. Consider Levy v Louisiana (391 US 68), establishing the equal rights of illegitimate with legitimate children.
The Bennett requirement of a condition precedent to judicial consideration of a child’s best interests may be a provident restraint on judicial discretion. For, "best interest” is a vague standard and its determination may rest on fine gradations and subtle, small differences between contending adults. However, a case like the instant one involves no subtlety. Roy has an unequivocal and unquestionable interest in termination of his parent’s title to him, and therefore he seemingly has a constitutional right to freedom from the parental possessory claim. To reconcile this constitutional right with Bennett, a compelling and indeed overwhelming interest like Roy’s must in itself be deemed an extraordinary circumstance within the meaning of Bennett, permitting the court to make an order on the basis thereof.
In sum, from the standpoint of the common law, statutory interpretation, and constitutional law, it is clear that Roy has a right to a termination of respondent’s title to him for the purpose of his adoption by his foster parents since such adoption is unequivocally in his best interests.
court’s jurisdiction to enforce child’s right
The remaining question is whether this court as a court of limited jurisdiction should enforce the child’s right to an order permitting his adoption.
There have been indications in other statutory proceedings for termination of parental title for the purpose of a child’s adoption, that this court must consider the best interests of the child even if the precise conditions have not been met which under the statute are to trigger such a consideration. That is, when a statutory proceeding is brought, this court has ancillary power to afford the statutory remedy on nonstatutory grounds that promote the general statutory purpose. (See Matter of Orlando F., 40 NY2d 103,111, supra; also Matter of Ray A.M., 37 NY2d 619, 624, affg 48 AD2d 161; Matter of *40 Anthony L. "CC”, 48 AD2d 415, 418.)[1] Ancillary power is necessary because the statute was framed in 1959 when there was little recognition of the rights of children.
Further, the principle that "for every right there is a remedy” applies particularly to constitutional rights. See Bivens v Six Unknown Fed. Narcotics Agents (403 US 388, 392), declaring that " 'courts will be alert to adjust their remedies so as to grant the necessary relief ” for the protection of constitutional rights. Here, as pointed out above, at stake is the child’s constitutional right to be treated as "a person, and not a subperson over whom the parent has an absolute possessory interest” (Bennett, 40 NY2d 543, 546, supra). This court is the most appropriate in the court structure to effectuate the right and order the appropriate remedy.[2] It therefore should be deemed to have the ancillary and inherent power to do so. As to this court’s "inherent power” to grant an appropriate remedy, see Matter of Richard S. v City of New York (32 NY2d 592, 596).
There is no basis for rejecting the application made on behalf of the child by his Law Guardian and by petitioner to free him for adoption, other than respondent’s claim of title. Such a claim cannot lawfully or constitutionally frustrate his best interests. An order will be entered authorizing Roy’s adoption by his foster parents.

. See Morrow v District of Columbia (417 F2d 728, 740) upholding the ancillary power of a lower criminal court and stating: "[T]o insure that 'complete justice may be done’ * * * ancillary jurisdiction should attach where: (1) the ancillary matter arises from the same transaction which was the basis of the main proceeding * * * or is an integral part of the main matter”; see, also, Consolo v Federal Maritime Comm. (383 US 607, 617, n 14).

. As to the duty of the State court system, like the Federal system, to enforce Federal constitutional rights, see section 2 of article VI of the United States Constitution; N.A.A.C.P. v Button (371 US 415, 427-428); Doherty v Meisser (66 Misc 2d 500, 555-556).