OPINION OF THE COURT
Bertram R. Gelfand, J.
In this agency adoption proceeding a threshold question is presented as to whether process should be served in the adoption proceeding upon the child’s biological mother who previously executed a nonjudicial surrender of the child at a time when the mother herself was an infant. The court directed, in the exercise of discretion, pursuant to the provisions of subdivision 3 of section 111 of the Domestic Relations Law, that the biological mother be served with process directing her to show cause why her prior surrender of the infant should not be accepted as a basis for not requiring any further consent to the adoption by her. Petitioners now seek reconsideration of this direction and that the court not require service of any notice of the proceeding on the natural mother of the infant.
The proposed adoptee is a nonmarital child who was born on March 15,1978. The child’s mother was then 14 years of age, having been born on May 3, 1963. On March 7, 1979, *79 the natural mother executed a surrender of the child to the Commissioner of Social Services of the City of New York. It is contended that since that time, the natural mother has not had any relationship with the child, nor has she in any way endeavored to contact the Department of Social Services, or the authorized agency that now has custody of the infant, nor has she in any way sought to contravene the implications of the duly executed surrender.
Our statutes provide both in private placement adoptions and in agency adoptions that consent to the adoption be given by the parent of the infant whether the parents be themselves adults or infants (Domestic Relations Law, § 111, subd 1, pars [b]-[e]). Case law has by implication indicated that the required consent can be executed by the infant parent individually without the necessity for the infant acting through a guardian ad litem, or other fiduciary, and without necessarily having had the aid of counsel (Matter of “Female” D., 83 AD2d 933, revg 105 Misc 2d 866; Matter of Anonymous, 77 Misc 2d 323, affd sub nom. Matter of T.W.C., 48 AD2d 893, affd 38 NY2d 128; Matter of Infant S., 48 AD2d 425, 426; Matter of X., 84 Misc 2d 770).
Matter of “Female” D. (83 AD2d 933, supra) by its silence on the issue appears to most directly address the question. In that case, a 15-year-old infant executed a nonjudicial surrender of her child for adoption without the aid of counsel. She subsequently brought a proceeding seeking to vitiate the implication of her surrender on the grounds that it was the product of fraud, duress and coercion. A divided Appellate Division held (p 934) that at the time the infant executed her surrender she “was well aware of the nature of the documents which she was signing.” The majority further held (p 934) that the infant’s act in surrendering her child was a “freely given consent”. The silence of both the trial court and the Appellate Division on the question of whether one under the disability of infancy can execute such a surrender suggests a conclusion that our statutes, in requiring the authorization to an adoption of a parent “whether adult or infant”, confer upon infants the authority to individually execute such a document.
In Matter of T.W.C. (supra), the Court of Appeals upheld a surrender executed by a natural parent four months *80 before her twenty-first birthday (the age of majority at the time). This surrender was executed before a Surrogate who painstakingly explained the implications of the surrender to the parent and made a record fully indicative of a voluntary knowing surrender.
In Matter of Infant S. (supra), the Appellate Division, First Department, addressed multiple issues in reversing a Family Court determination denying the petition of adoption. Among the findings reached in allowing the adoption was a finding of the validity of the natural mother’s surrender under a fact pattern that indicates that the natural mother was 15 years of age and had reaffirmed before the Family Court the earlier surrender of the child by her and her mother.
In Matter of X. (supra), my learned and respected colleague, Surrogate Horey, concluded in a private placement adoption proceeding that the consent of an infant parent to the application was individually required, that this consent should be before the court, and that the infant’s interest in the proceeding should be protected by the guidance of a guardian ad litem who was appointed to assist the infant.
In arriving at what is an appropriate exercise of discretion in this case, none of the above holdings relieve the court of the obligation to be sensitive to the extent to which in the relatively recent past New York’s procedures for terminating parental rights have been the subject of judicial determinations addressed to the issues of equal protection and due process (see Caban v Mohammed, 441 US 380; Santosky v Kramer, 455 US 745; Matter of Ricky Ralph M., 56 NY2d 77). Great sensitivity must also be shown to the firm admonition of the United States Supreme Court in Lassiter v Department of Social Servs. (452 US 18), that while there is no right, as such, to counsel in a termination proceeding, a termination of parental rights for adoption will be viewed as satisfying constitutional due process only if characterized by a proceeding conducted in a context indicative of clear fundamental fairness.
In the instant case the natural mother was less than 16 years of age when she personally executed documents *81 forfeiting her parental rights forever. At the time she had no fiduciary, nor does it appear that she had the aid of counsel. The nature of the right she surrendered is a most significant one. It is one which very recently both the United States Supreme Court and the New York Court of Appeals have forcefully indicated should not be lightly terminated (see Santosky v Kramer, supra; Matter of Ricky Ralph M., supra).
In Santosky v Kramer (455 US 745, _, supra), the majority restated the majority’s statement in Lassiter v Department of Social Servs. (supra), that it is “‘plain beyond the need for multiple citation’ that a natural parent’s ‘desire for and right to “the companionship, care, custody, and management of his or her children” ’ is an interest far more precious than any property right. 452 U.S., at 27 * * * quoting Stanley v Illinois, 405 U.S., at 651”. The United States Supreme Court in Santosky viewed parental rights as so significant that it proclaimed that regardless of any State procedure to the contrary, parental rights are so serious that to terminate them on a quantum of proof no greater than a fair preponderance of the evidence is offensive to constitutional due process. Due process can only be satisfied if the quantum of proof supporting a termination of parental rights rises to the higher level of “clear and convincing”.
As recently as May 18, 1982, Judge Fuchsberg, writing for a unanimous Court of Appeals in Matter of Ricky Ralph M. (supra, at p 81), emphasized the significance of terminating forever the status of a natural parent by adoption by stating “‘[a] parent’s interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one’ (452 US, at p 27) and may not be accomplished without stern adherence to the dictates of due process”.
At this juncture in the evolution of what constitutes an appropriate judicial termination of parental rights, it would be sheer folly to blindly conclude that New York law provides that an infant cannot proceed in the most de minimis commercial matter without a fiduciary, but an infant acting with neither a fiduciary nor counsel can individually surrender a child for adoption without judicial *82 supervision at some point. That this was never the intent of the Legislature is indicated in germane statutes. The New York statutory procedures for the surrender of children distinguish between the finality of a surrender under judicial supervision and one outside the scope of such supervision (see Social Services Law, § 384; Domestic Relations Law, § 115-b). Our statutes recognize that a judicially supervised surrender provides a guarantee of impartial maintenance of the knowing and voluntary nature of the surrender to an extent that cannot conceivably be assured in an administrative procedure handled by lay persons whose interest may be adverse to that of a surrendering parent.
Section 115-b of the Domestic Relations Law provides that in a private placement adoption, a surrender concluded before a judicial officer is final and irrevocable immediately upon being accepted by such judicial officer. In contrast, a surrender not executed before, and accepted by, a judicial officer becomes final only 30 days after commencement of an adoption proceeding, and then only if the surrender on its face indicates that it will become irrevocable within that period. Section 384 of the Social Services Law provides that an irrevocable surrender to an agency does not become final until 30 days after the placement of the child for adoption, unless subsequent to execution the surrender has been approved by a Surrogate or Family Court Judge. Under any circumstances, even though an infant may sign a paper surrendering his or her child for adoption, this does not obviate the necessity for the surrender to be pursuant to statute, that it not be the product of fraud or duress, and that the surrender flow from a full understanding of its legal consequence (see Matter of Anonymous, supra, affd sub nom. Matter of T.W.C., supra; Matter of Infant S., supra; Matter of Anonymous, 60 Misc 2d 854). Clearly, an adjudication of issues such as this in the context of an adverse proceeding is preferable to an ex parte determination.
In deciding whether it is appropriate that the court should exercise its discretion and require under the facts here present the service of process upon the natural mother, the controlling principle is the overriding mandate *83 expressed by the United States Supreme Court in Lassiter v Department of Social Servs. (supra) that for due process to be satisfied the test is that every litigant have his or her rights determined in a context of “fundamental fairness”. Clearly, when an infant has unilaterally signed a surrender of a right, which the highest State and Federal courts have characterized as greater than any property right, when the moment arises for the finality of the imprimatur of judicial approval to be placed on the surrender, discretion dictates that, when the option of having the now adult parent appear in the proceeding is feasible and reasonable, that this option be embraced as intrinsic to fundamental fairness.
This conclusion is reached with a deep sensitivity to a paramount goal in adoptions being to relieve the completed proceeding from even the possibility of future attack. A completed adoption should confer upon the adoptive parents a parental status that is, in every way, as legally invulnerable as is the relationship of parent and child which flows from natural conception and birth. The finality of any proceeding is enhanced by affording parties adversely affected by a determination the opportunity to have their day in court, if they wish to be heard. If such parties are afforded this opportunity and choose to forfeit it by a default, their right to come forward in the future is, at the very least, substantially circumscribed, and, at best, totally precluded.
Where service of process that would give notice to the natural mother of the adoption proceeding is neither burdensome nor expensive, circumspection clearly dictates that service of such process be directed. Procedural shortcuts which deny parties in interest the opportunity to be heard do not serve the best interest of either petitioners, the agency, or the infant. This is not to conclude that under other circumstances, such as where the surrendering mother cannot possibly be located, despite due diligence, and any notice to her would have to be by publication, that discretion would not dictate that under such circumstances the expense, delay and cost of publication, which offers little realistic hope that it would offer de facto notice to the mother, need not be embraced. Likewise, the determina *84 tion that the now emancipated natural mother be given a last opportunity to be heard does not in any respect constitute a conclusion that at this juncture she necessarily has any right to veto the adoption. The rights, if any, of the natural mother must await her contentions, if any, which are asserted in the proceeding after she is given the opportunity to be heard.
Accordingly, in the exercise of discretion, pursuant to subdivision 3 of section 111 of the Domestic Relations Law, it is concluded that the service of process upon the natural mother is appropriate and the application to forego such service is denied. In light of petitioner’s allegation that personal service of process cannot be made upon the natural mother with due diligence, the court directs that service of the citation be made by personal delivery upon the maternal grandmother of the infant with whom the natural mother is in regular contact, with the direction on the face of said citation that it be forwarded by the recipient to the natural mother (see SCPA 307, subd 2, par [e]; Domestic Relations Law, § 111, subd 3).