STATE EX REL. LEWIS, and another, Appellants, v. LU-THERAN SOCIAL SERVICES OF WISCONSIN AND UPPER MICHIGAN, Respondent.

*No. State 12 (August Term, 1970). Submitted under sec. (Rule) 251.54 February 5, 1975.—Decided April 10, 1975.*
(Also reported in 227 N. W. 2d 643.)

For the appellant Jerry D. Rothstein there were briefs by *William G. Rice* of Madison and *Borgelt, Powell,*

*Peterson & Frauen* of Milwaukee, attorneys, and *Robert C. Burrell* of Milwaukee, of counsel.

For appellant John Thomas Lewis there was a brief by *Bruce C. O'Neill* of Milwaukee, guardian *ad litem* for John Thomas Lewis.

For the respondents there was a brief by *Hamilton & Mueller* of Dodgeville, attorneys for the adoptive parents; a brief by *Ralph von Briesen* of Milwaukee, attorney for Lutheran Social Services of Wisconsin and Upper Michigan, and *Stephen W. Hayes* and *von Briesen, Redmond, Schilling & Kreunen* of counsel, all of Milwaukee.

For Karen Lewis there was a brief by *John D. Heywood* and *Heywood & Hayes,* all of Hudson.

WILKIE, C. J. This is the fourth time this habeas corpus proceeding has come to this court. The controversy involves the termination of the parental rights of Jerry D. Rothstein, the putative father of John Thomas Lewis, born to Karen Lewis in July, 1968. When the parental rights of Karen Lewis were terminated in August of 1968 by the La Crosse county court, Jerry D. Rothstein brought proceedings in that court asserting his parental rights. Relief was denied by the La Crosse county court. An original action for habeas corpus was commenced in this court, which also denied relief.[1] The United States Supreme Court, on appeal, remanded to this court to reconsider in view of *Stanley v. Illinois.*[2] On remand, this court referred the matter to Hon. BYRON B. CONWAY, county judge of Wood county, as referee, to try the issues of: (a) Whether Rothstein was the father of John Thomas Lewis, (b) if so, whether he was fit to have custody, and (c) if he were fit, whether he should have custody. This court received the report of the referee. The referee's finding that Jerry D. Roth-

[1] *State ex rel. Lewis v. Lutheran Social Services* (1970), 47 Wis. 2d 420, 178 N. W. 2d 56.

[2] (1972), 405 U. S. 645, 92 Sup. Ct. 1208, 31 L. Ed. 2d 551.

stein is the father is not contested. This court vacated the judgment of the county court of La Crosse county of November 11, 1969, denying Jerry D. Rothstein the right to be heard, and directed the court to hold a hearing to determine the termination of the respective parental rights of the natural parents of John Thomas Lewis.[3] That hearing has been held and the court's order, dated June 26, 1974, terminated the parental rights of Jerry D. Rothstein as of November 11, 1969, and reserved the question of the termination of the parental rights of Karen Lewis. At the hearing in the La Crosse county court on February 14, 1974, Karen Lewis moved to vacate her August, 1968, consent to the termination of parental rights, but this motion was made contingent on the court's determination that parental rights of the father were not terminated. Following the 1974 hearing, and pursuant to the entry of its order, the trial court made the following findings of fact:

"9. That on December 24, 1967, Karen Lewis advised Rothstein that she was pregnant. Rothstein immediately disclaimed paternity and declined to marry Miss Lewis on that basis. His position with regard to paternity and marriage persisted until after Miss Lewis' final letter to him terminating their relationship in the spring of 1968.

". . .

"13. That Rothstein showed a general disregard for the health and well-being of Miss Lewis while she carried his child.

"14. That from December 24, 1967, to the final separation of the parties, Rothstein evinced no concern for, interest in, or plans for the unborn child.

"15. That from the time they left Denver until their final separation, Rothstein repeatedly declined to marry Miss Lewis or accept responsibility for the yet unborn child."

---

[3] *State ex rel. Lewis v. Lutheran Social Services* (1973), 59 Wis. 2d 1, 207 N. W. 2d 826.

This order comes before this court for review pursuant to our mandate of June 5, 1973. The first issue presented on this review is whether the trial court's findings are contrary to the great weight and clear preponderance of the evidence. They are not.

Karen Lewis did not testify that Rothstein denied paternity in so many words. Rather, she testified that he refused to marry her after she informed him of her pregnancy, stating that he could not be sure he was the father of the child. Rothstein denied these conversations. He testified that he had always intended to marry Miss Lewis, but he was evasive as to when he intended the marriage to take place. In entering its findings of fact and conclusions of law, the trial court observed that it believed Miss Lewis and disbelieved Rothstein on every point where their testimony was in conflict, because her testimony was "substantially more credible and convincing." The findings are not against the great weight and clear preponderance of the evidence. In fact, we would make the same findings on the record in this case.

Karen Lewis left Rothstein in Portland in early February, 1968. Prior to that time she informed him in Denver on December 24, 1967, that she had been to a doctor, who confirmed her pregnancy. Rothstein's response to this was that he wanted to know the name of the doctor to make certain that his name could not be used on the birth certificate as the father of the child. He further stated he would not deny the possibility that he was the father, but that there was no way he could tell how many other men Karen Lewis had had intimate relations with. Miss Lewis hoped when she left Rothstein in Portland that he would accept his responsibility for the child and they would be married and provide a home for it. It was her feeling that a separation might accomplish this. After Karen arrived at the home of

her aunt and uncle in Janesville, she visited Rothstein two or three times in Chicago and had several additional telephone conversations with him during the spring of 1968. On at least one of these occasions she communicated to him the fact that her aunt and uncle had offered to finance a wedding for them. Rothstein's response was that he did not know he was the father of the child, and that if he was not there was no reason for a marriage. Karen concluded that there was no hope of changing Rothstein's attitude toward her or the child. She therefore decided to terminate her relationship with Rothstein and give the child up for adoption after it was born. She wrote him a letter informing him of this fact in the spring of 1968. Rothstein's feelings, as evidenced by a statement to Miss Lewis' aunt in April, 1968, were that he was not ready to accept the responsibility of marriage and a family, and that the conception of the baby was the fault of Miss Lewis.

After receiving Miss Lewis' letter terminating the relationship, Rothstein changed his mind and decided to acknowledge his parenthood and propose marriage to Karen Lewis. He wrote her 11 letters, beginning in May, 1968. All the letters were returned to him unopened. Miss Lewis left Janesville at some time that does not appear in the record, and went to La Crosse where the baby was born in July, 1968. Here parental rights to the child were terminated with her consent in August, 1968. Rothstein did not locate Miss Lewis until after the baby was born and her parental rights had been terminated. He filed a petition in the La Crosse county court for determination of his parental rights and duties on December 5, 1968. The subsequent history of this case is reported in our two prior opinions.

The facts in this case compel the conclusion that Rothstein abandoned his child before it was born. The trial court concluded:

▬▬▬▬▬▬▬▬▬▬

"That his repeated denials of paternity, lack of concern for or interest in the support, care and well-being—including pre-natal care—of the child, and the disregard for the well-being of the child's mother from the date the pregnancy was announced to approximately the birthdate of the child manifested a clear intent on the part of petitioner, Rothstein, to disassociate himself from responsibility for the birth and care of the child."

Rothstein's refusal to accept responsibility required Miss Lewis to decide whether to keep the baby or put it out for adoption after it was born. She chose the latter course, making her decision in the best interests of the child. She was not required to wait until the last minute to make this decision. She was entitled to act in reliance on Rothstein's actions and statements prior to and during the spring of 1968.

Since we have concluded Rothstein abandoned the child, the question becomes whether Rothstein should be permitted to avoid the effects of his abandonment because of his subsequent change of heart. Parental rights may be terminated upon a finding "that the parents have abandoned the minor." [4] Determinations under the Children's Code, ch. 48, Stats., are to be made giving paramount consideration to the best interests of the child.[5] We are persuaded that the best interests of the child in this case will be served by terminating Rothstein's parental rights because of his abandonment of the child prior to its birth. Accordingly, we affirm that portion of the county court's order which terminates the parental rights of Jerry D. Rothstein.

The second issue that is raised on this review of the trial court's order is whether the trial court was correct in reserving its decision on the termination of Karen Lewis' parental rights. Her consent to the termination of parental rights, which was given in August, 1968,

---

[4] Sec. 48.40 (2) (a), Stats.

[5] Sec. 48.01 (3), Stats.

constituted an abandonment of the child and was given, as she indicated, in the best interests of the child. The fact that Karen Lewis was permitted, by virtue of our June 5, 1973, mandate to withdraw her consent does not change the situation. The best interests of the child will be served by terminating Karen Lewis' parental rights and the order of the county court is modified accordingly.

*By the Court.*—The order is modified to provide that the parental rights of Karen Lewis, as well as the parental rights of Jerry D. Rothstein, are terminated. As modified, the order is affirmed.