Millard L. Midonick, S.
In this proceeding the petitioners adoptive parents seek this court’s approval of a private-placement adoption by them of a one-year-old child of an unwed mother, who resides in a State far from New York. The child has been with the married petitioners since she was eight days old. The proceeding is brought under the provisions of section 115 of the Domestic Relations Law.
The natural mother has signed the agreement of adoption and consent. Submitted with the petition for adoption is also an irrevocable consent and an affidavit of natural parent which were signed and acknowledged by the natural mother before her out-of-State attorney.
Owing to a system initiated in this county by this court in 1972 for all nonrelated, private-placement adoptions, the Division of Adoption Services of the Bureau of Child Welfare of *515 the Department of Social Services of the City of New York has conducted a thorough investigation of the home, character, stability and suitability of the adoptive parents and the well-being of the baby. The natural mother has expressly approved of the religious faith of the adoptive parents in her affidavit. (Social Services Law, § 373.) This preliminary report enthusiastically recommends the granting of the adoption to these petitioners as clearly in the best interest of this infant of tender years. This infant has been in no other home since March 25, 1976, a few days after its birth on March 17, 1976. The adoption department of this court is staffed by a lawyer and a clerk-typist. The addition of a trained social worker is required.
The provisions of subdivision 7 of section 115 of the Domestic Relations Law permit this court to dispense with the personal appearance of the natural mother "for good cause shown”. The attorney for the petitioners urges the court to dispense with the appearance of the natural mother because she resides outside of this State. She executed an irrevocable consent and waiver and she was represented by a reputable local attorney in her county. The papers indicate that in accordance with subdivision 7 of section 115 of the Domestic Relations Law, all of the affidavits and consents have been duly acknowledged before notaries public. Moreover, the signatures of the notaries have been duly authenticated by county clerk certificate where such affidavits were executed and notarized outside the State of New York.
This court usually prefers oral testimony by an out-of-State natural parent before a court in such parent’s home State in private-placement adoption matters. This court places great importance on having an adoption final when completed and free from attack and controversy. This court has the discretion and power to order that a natural mother be cited and served by mail and/or publication (Domestic Relations Law, § 115, subd 3; Admin Bd of Jud Conf, general rule 12; 22 NYCRR 20.9; cf. Mullane v Central Hanover Trust Co., 339 US 306) or that a guardian ad litem be appointed to represent a natural mother who is an infant (SCPA 402; Matter of Adoption of X, 84 Misc 2d 770). The one here involved was at time of consent but is no longer an infant. In the alternative, this court could direct that an out-of-State natural mother be asked to appear now before a Judge in the State in which she resides. The statute does not seem to require such direction by *516 the court, but in new petitions to be filed in the future in private-placement adoption cases, this court may, if indicated, require testimony in open court, whether here or elsewhere, by the natural parent, if that parent is available. Such natural mother should have the impartial advice of a Judge in court, as to whether she needs counseling, legal or financial or other assistance, adjournments and the like. In agency adoption cases, such safeguards are provided by social workers and other professionals before a natural mother executes a surrender. A private attorney does not have the facilities of an agency and usually cannot provide such counseling.
It may occur in a future private-placement adoption case that a natural mother will refuse to appear in her own local court or in this court. If she can be persuaded to appear in such a court of competent jurisdiction, the following considerations should be the subject of inquiry from the natural mother and any experts or others available: (1) whether the natural mother has been properly counseled as to how and whether she can retain her baby with or without public assistance, as to how she can regain her baby after temporary foster care if indicated, as to whether she needs more time to consider finalizing plans for her baby; (2) as to whether the natural mother’s emotional state is stable enough to make a final decision; (3) as to whether the natural mother is unduly influenced by or under duress from her parents or others, or misled by fraud, to give up her baby; (4) as to whether the natural mother is of sound mind. All of this is better done in open court with an impartial Judge putting such questions to the natural mother (and possibly to the natural father if he is involved), and any others, including social workers, who may be of assistance and readily available.
The essential reason why this court is not insisting upon such a procedure described above at this time is because it is too late for the baby, and also because the Bar has not been so advised in advance. After a year in a fine home with exemplary adoptive parents in New York, it would be a disservice to this infant to notify this now 18-year-old natural mother of her possible right to the day in court that she waived in writing. (Cf. Rothstein v Lutheran Social Servs. of Wis., 405 US 1051, citing Stanley v Illinois, 405 US 645, and reaffirmation of adoption in subsequent Wisconsin proceeding on remand 68 Wis 2d 36.) In Rothstein v Lutheran (supra), the Supreme Court has raised the right of an infant to obtain a *517 permanent adoption home to constitutional dimension by emphasizing that the best interests of the infant must be considered by giving "due consideration” to the "fact that the child has apparently lived with the adoptive family for the intervening period of time.” This fact was to be considered despite the natural parents’ usual right to oppose the adoption.
This court will also require more explanation in future private-placement adoption cases of the conditions under which a natural mother delivers her child, via hospital personnel or nonlicensed persons, to adoptive parents. (Social Services Law, § 374, subd 2.) The Bar should be advised that it is improper for attorneys or hospital personnel to receive or accept a child for adoption. (Matter of Baby Girl "Doe”, NYLJ, April 3, 1975, p 18, col 6.) The Attorney-General of the State of New York, in his opinion of January 9, 1975 (published NYLJ, Feb. 7, 1975, p 1), with respect to a situation that occurred in California, held that the activities of a New York attorney in securing children through personal contacts with hospitals and doctors for the purpose of adoption constituted a "placing out” of infants under subdivision 12 of section 371 of the Social Services Law. Since the attorney was neither an authorized adoption agency (Social Services Law, § 371, subd 10, par [a]) nor a court or public welfare official (Social Services Law, § 371, subd 10, par [b]), and he, rather than the natural parents, placed the child for adoption, his conduct was held to violate subdivision 2 of section 374 of the Social Services Law.
We have applied the following rule in this case that is sought to be implemented State-wide and which my colleague, Judge Spiegel, and I will apply in all future private-placement adoptions in this court. Some of this inquiry was formulated and circulated by Surrogate Bennett of Nassau County.
The following information will be sought from the petitioners and their attorney:
(1) The attorney of record for the adoptive parent or parents shall file a statement under oath, and if indicated, answer under oath as follows:
(a) The date and substance of his or her retainer agreement, if any, with the adoptive parent or parents.
(b) The total compensation paid and to be paid.
(c) A brief statement of the number of hours expended in *518 the services rendered, his or her usual hourly rate and any unusual difficulties involved.
(d) The name and address of any other attorney or attorneys who shared in the legal fees received by him or her in connection with such services or to whom compensation was paid directly or indirectly by the adoptive parents.
(e) A brief statement of the nature of such services rendered by any such attorney or attorneys, the amount of the compensation paid or to be paid and whether the attorney of record shared in any fees received by any other attorney paid directly or indirectly by the adoptive parent or parents.
(f) The number of other adoption proceedings in all courts in which the attorney of record was retained within the past three years including the number of adoptions in which either the mother or the child is or was originally domiciled in another State, and the manner in which the adoptive parents became aware of the availability of this baby for adoption.
(2) The adoptive parent or parents shall file a statement under oath and, if indicated, answer under oath as follows:
(a) The amount of compensation paid to any person or organization, etc. or to be paid to the attorney of record.
(b) The amount of compensation paid, directly or indirectly, to any other attorney or other person or organization involved in the proceeding in any way together with the names and addresses of any such attorney, and other persons.
(c) Whether to their knowledge any attorney shared in the legal fees received by the attorney of record and the respective amounts each received including the name and address of any attorney sharing in such legal fee.
(d) Has the adoption been the subject of a proceeding in another jurisdiction.
(e) The manner in which the adoptive parents became aware of the availability of this baby for adoption.
These facts will be in addition to the current inquiries of the same sort involving all non-attorney persons, such as doctors or others involved in placing out for adoption.
The answers in this case to the above questions already in our file indicate that the out-of-State attorney and the New York attorney received modest fees. These fees are not in excess of reasonable compensation for the legal services involved, if supported by affidavits and testimony. Consequently, it is clear that this baby was placed for adoption for reasons of *519 its own best interest and not in consideration of money or other valuable consideration.
This matter will be placed on the calendar to complete the taking of the testimony of the petitioners.