OPINION OF THE COURT
Mara T. Thorpe, J.
In this private-placement adoption proceeding, the petitioning adoptive parents have moved for an order dispensing with the appearance of the child’s natural parents for examination before the court. Extrajudicial consents to the child’s adoption *1017 have been submitted, both of which were acknowledged before the petitioners’ attorney. Also submitted are affidavits signed by each of the natural parents which state that they understand the rights that they relinquish by their consent, the alternatives to consenting to the child’s adoption, and the reasons for their decision to so consent. These affidavits have been notarized by the petitioners’ attorney.
I.
Domestic Relations Law § 115 (3) provides that all persons whose consent to an adoption is required by Domestic Relations Law § 111 must appear before the Judge of the court where the adoption proceeding is instituted. This requirement applies in cases in which an extrajudicial consent has been executed as well as in those in which the consent is to be executed before the court. However, where an extrajudicial consent is "duly acknowledged or proved and certified in form sufficient to entitle a conveyance to be recorded in this state”, the court may dispense with that person’s appearance for good cause shown. (Domestic Relations Law § 115 [8].)
In a private-placement adoption, the consent of the natural mother and, under certain circumstances, the consent of the natural father are required. (Domestic Relations Law § 111 [1] [b]-[e].) Since the natural mother has identified the natural father in her affidavit and since the petitioners have specifically requested that the natural father’s appearance be dispensed with, the court assumes that the circumstances in this case are such that his consent is mandated by Domestic Relations Law § 111.
This case has twice been placed on the Adoptions Calendar for the appearance of the child’s natural parents, but neither appeared on either occasion. It appears that they reside in the State of Connecticut. The petitioners’ attorney has submitted with the instant application a copy of a letter sent to him by the natural mother indicating that she has no means of getting to New York to appear in court and stating that "[i]f there is any way to just do this through a notary public it sure would help.” Additionally, the attorney alleges that the natural father telephoned him and stated that the natural mother would not appear before this court.
It is argued by the petitioners’ attorney that the foregoing circumstances constitute good cause for dispensing with the natural parents’ appearance before this court and that since *1018 their extrajudicial consents were duly acknowledged before him and have not been revoked, the adoption may proceed in their absence. The court does not agree.
The purpose of requiring those whose consent is necessary to an adoption to appear before the court is, in the case of extrajudicial consents, to confirm that the consents to the adoption were knowingly, intelligently and voluntarily given. Natural parents’ rights to the care and custody of their child are among the most fundamental rights recognized by society and are protected by the Federal Constitution. (Santosky v Kramer, 455 US 745; Stanley v Illinois, 405 US 645.) Until natural parents execute documents consenting to an adoption by legal strangers, their rights to enjoy the care and custody of their child are superior to all others, absent a showing that they are unfit to assume the duties and privileges of parenthood. (Matter of Male Infant L., 61 NY2d 420.) By executing an extrajudicial consent meeting the requirements of Domestic Relations Law § 115-b, they set in motion a process which will end in the termination of their parental rights when an order of adoption is issued (Domestic Relations Law § 117), and by the very act of signing such a form they instantly lose their superior position vis-á-vis the adoptive parents. For even if they were to take the proper steps to revoke their consent immediately thereafter, their ability to regain the right to custody of the child would be determined not on the basis of their status as natural parents, though they be fit and able to support the child, but rather by a judicial assessment of whether revocation of the consent would be in their child’s best interests. (Domestic Relations Law § 115-b; Matter of Sarah K., 66 NY2d 223, cert denied sub nom. Kosher v Stamatis, 106 US 1108.)
Unquestionably, natural parents may give up their rights to their child and in New York State they may do so by executing a proper extrajudicial consent. However, the relinquishment of fundamental constitutional rights must be knowing, intelligent and voluntary. (Fuentes v Shevin, 407 US 67, reh denied 409 US 902; Johnson v Zerbst, 304 US 458; Matter of Bernadette L. C., 115 Misc 2d 78; see, Matter of Unnamed Baby Boy, 110 AD2d 1019; Matter of Infant S., 48 AD2d 425.) If it is not, it is invalid and any action by the State based thereon is subject to challenge.[1]
*1019 Since certainty and finality in an adoption proceeding are highly desirable, both from the point of view of the child, who has a substantial interest in a secure home, and from the point of view of the adoptive parents, whose bonding with the child should be unimpeded by fears of possible loss of the child, it is of great importance that an adoption be final when completed and not subject to future attack or controversy. (See, Matter of Sarah K., supra; Matter of Bernadette L. C., supra; Matter of Baby E., 104 Misc 2d 185; Matter of Anonymous [G.], 89 Misc 2d 514.) Since courts may " 'not presume acquiescence in the loss of fundamental [constitutional] rights’ ” (Johnson v Zerbst, supra, at 464, quoting Ohio Bell Tel. Co. v Public Utils. Commn., 301 US 292, 307), and, indeed, must " 'indulge every reasonable presumption against’ ” such relinquishment (Johnson v Zerbst, supra, at 464, quoting Aetna Ins. Co. v Kennedy, 301 US 389, 393), it is incumbent upon an adoption court to scrutinize an extrajudicial consent and determine whether it was executed knowingly, intelligently and voluntarily. Such determination must depend, in each case, upon the particular facts and circumstances surrounding execution of the consent. (See, Johnson v Zerbst, supra.)
Thus, when natural parents who have signed extrajudicial consents appear in court pursuant to Domestic Relations Law § 115 (3), they are examined about their understanding at the time of execution of the consent of the rights they relinquished by consenting to the adoption, of the consequences of relinquishing them, and of their awareness of the alternative courses of action open to them which would have enabled them to either keep the child or regain custody of the child in the future. Inquiry is also made to confirm that the consent was not the product of fraud, coercion or duress.[2]
The question of what constitutes good cause for dispensing with a natural parent’s appearance before the adoption court has received scant attention in published case law. However, it is a common practice in cases in which natural parents *1020 reside in another State or in a distant part of this State, to arrange for them to appear before a local court of appropriate jurisdiction to confirm their consents. Where there is judicial confirmation that the parents understood and voluntarily agreed to give up their rights, the purpose of requiring their appearance before the adoption court is fulfilled. Under such circumstances, upon receipt of an adequate, certified transcript of the proceeding in the other court, the adoption court will generally find good cause to dispense with their appearance pursuant to Domestic Relations Law § 115 (8).
In the instant case, it does not appear that any effort was made to arrange for the natural parents to appear before a Connecticut court, or to arrange transportation for them to come to New York City to appear before this court. Nor do the circumstances surrounding the execution of the extrajudicial consents provide any assurance that they were knowing, intelligent and voluntary.
It appears from the papers submitted herein that the child was born in Connecticut, and it is alleged that the natural parents brought him into New York State five days later to turn him over to the adoptive parents. Exactly where the change of custody and execution of the papers took place does not appear, for the affidavits of neither parent indicate the State or county where they were executed.
It is clear from the papers, however, that they were executed before the attorney for the adoptive parents and that no attorney for the natural parents was present. Furthermore, while an affirmation filed by the adoptive parents’ attorney states that he personally devoted a total of several hours to telephone conversations with the natural mother on numerous occasions, there is no evidence that she or the natural father ever had the benefit of independent legal advice.
Conversations between a natural parent and the adoptive parents’ attorney, no matter how extensive, do not provide the assurance an adoption court needs that the natural parent fully understood her rights and options. The adoption process is typically a highly emotional undertaking for both natural and adoptive parents. Even when a natural parent has her own attorney, it is incumbent upon the attorney to take particular care that she understands the legal significance of her actions and to counsel her about the advisability of the action contemplated. (See, ABA Standing Comm on Ethics and Professional Responsibility, Inf Opn 87-1523 [1987].) Since a *1021 natural parent gives up her superior position by signing an extrajudicial consent and has 45 days to revoke it (Domestic Relations Law § 115-b [3] [a]), there is an inescapable conflict of interest between the two sets of "parents”. It is evident that an attorney for adoptive parents cannot be fully dedicated to achieving the goals of his clients and at the same time be relied upon to ensure that the natural parent’s relinquishment of her rights was knowing, intelligent and voluntary. Indeed, that attorney has, at the very least, a strong incentive to persuade her on behalf of his clients that surrender of the child is the best course of action.
Even when a natural parent has her own attorney, however, she should be required to appear in court. As former Surrogate Midonick stated in Matter of Anonymous (G.) (89 Misc 2d 514, 516, supra): "Such natural [parent] should have the impartial advice of a Judge in court, as to whether she needs counseling, legal or financial or other assistance, adjournments and the like. In agency adoption cases, such safeguards are provided by social workers and other professionals before a natural mother executes a surrender. A private attorney does not have the facilities of an agency and usually cannot provide such counseling.”
In the instant case the natural parents not only had no attorney, but they apparently did not even have contact with the office of the Connecticut Administrator of the Interstate Compact on the Placement of Children (Compact) which would have made inquiries about their wish to place their child with the petitioners for the purpose of adoption. Despite the fact that the placement which occurred in this case is governed by the provisions of the Compact, there is no evidence of adherence to its requirements. This matter will be addressed below.
There is one additional circumstance in this case which raises a question in the court’s mind about the natural mother’s understanding of the extrajudicial consent and other affidavits she signed, and that is the letter she sent to the petitioners’ attorney. The handwriting in the body of that letter is strikingly different from that in the signature. If the natural mother was unable to write such a letter herself, one must ask whether she was able to read the documents which she signed.
In sum, no facts in this case constitute good cause for dispensing with the natural parents’ appearance in court as required by Domestic Relations Law § 115 (3). On the con *1022 trary, there are many circumstances which indicate that their appearance for examination before a court is essential.
Accordingly, the motion to dispense with their appearance is denied, and the petitioners are directed to take forthwith those steps necessary to obtain the natural parents’ testimony either before this court or an appropriate court in Connecticut. If the testimony is taken in Connecticut, sufficient questioning is to be conducted to establish whether or not the signing of the extrajudicial consents was knowing, intelligent and voluntary, the details of the transfer of . physical custody of the child to the petitioners and where that took place, and what moneys or other items of value have been given or promised to the natural parents or any other persons on their behalf in connection with this proposed adoption.
n.
When arrangements are made either by or for a parent to send or bring a child, not a resident of New York State, into this State for the purpose of placing him with legal strangers for adoption, there must be compliance with the Compact which is contained in Social Services Law § 374-a. (Matter of Baby E., 104 Misc 2d 185, supra.) It is only when such a child is sent or brought into New York by a parent for placement with a stepparent, grandparent, adult brother, sister, aunt or uncle or with a legal guardian that the parent is exempted from compliance with the Compact. (Social Services Law § 374-a [1], art VIII; regulation III [c] adopted by Assn of Administrators of Interstate Compact on Placement of Children, eff Apr. 9, 1978.)[3]
*1023 It does not appear that the natural parents in this case are related to the petitioners or are even acquainted with them. So far as appears from this file, the only information they had about the proposed adoptive parents came from the latter’s attorney. Thus, compliance with the procedures of the Compact was mandatory.
The purpose of the Compact is to protect children transported interstate and to maximize their opportunity to be placed in a suitable environment with persons or agencies able to provide the necessary and desirable level of care for them. (Social Services Law § 374-a [1], art I.) To this end, the Compact requires advance notification of the proposed placement to the appropriate authorities in the State which would be receiving a child so that they may have an opportunity to investigate. (Social Services Law § 374-a [1], arts I, III [b].) Transporting the child or causing him to be transported into the receiving State prior to receipt of notification from that State’s authorities that the placement does not appear to be detrimental to the child is prohibited. (Social Services Law § 374-a [1], art III [c].)
The petition in this matter does not allege compliance with the Compact, as required by Domestic Relations Law § 115 (11) (a), nor, as noted above, is there any evidence that its provisions were complied with as required by Domestic Relations Law § 115 (12). The petitioners are therefore directed to seek approval of this placement forthwith from the appropriate authorities and to file the response together with an amended petition.

. If it is a valid consent, it becomes irrevocable 45 days after its execution unless written notice of revocation thereof is received by the court in which the adoption is to be commenced within that 45-day period. (Domestic Relations Law § 115-b [3] [a].)

. Additionally, to ascertain whether Social Services Law §§ 374 and 382 have been complied with, it may be appropriate in certain cases to inquire about how the natural parents learned of the adoptive parents, the circumstances under which physical custody of the child was transferred to the latter, and what moneys were paid. (See, Matter of Baby E., 104 Misc 2d 185; Matter of Anonymous [G.], 89 Misc 2d 514.)

. Social Services Law § 374-a (1), art III is the only statute which exempts parents from the operation of the Compact. Neither Social Services Law § 374 (2) nor § 382 (2) (c) do so.
Social Services Law § 374 (2) states: "No person, agency, association, corporation, institution, society or other organization except an authorized agency shall place out or board out any child but the provisions of this section shall not restrict or limit the right of a parent, legal guardian or relative within the second degree to place out or board out a child.” (Emphasis supplied.) The provisions of the Compact are not affected by this statute.
Similarly, Social Services Law § 382 (2) (c) only exempts a parent from the requirement of obtaining a license from the Department of Social Services before placing a child in this State. It does not pertain to compliance with the Compact. (See, L 1984, ch 549, Bill Jacket, sponsor’s mem in support of S-8655 [1984 NY Legis Ann, at 201], mem of Dept of Social Services regarding Senate Bill 8655.)