OPINION OF THE COURT
Bruce M. Kaplan, J.
The petitioners have requested permission to dispense with the appearance of the natural mother in this adoption proceeding. This application was made more than six months after the natural mother executed an extrajudicial consent on August 21, 1990. During this period two significant events occurred. The natural mother made an untimely attempt to revoke her consent on October 23, 1990, far longer than 45 *536 days after its execution. On November 19, 1990 she withdrew her purported revocation of consent, and briefly set forth her reasons.
She reiterated her reasons for the withdrawal of the defective revocation in an affidavit acknowledged on February 22, 1991, and noted that since the child’s birth she had had the benefit of psychological counseling. This was accompanied by a January 1991 affirmation from the attorney who had been representing her since July 1990. He indicated that he had provided ongoing advice to her throughout this extended period.
After consideration of the particular facts of this case, and the statutory matrix in which the matter unfolded, the application is granted.
The Legislature, sensitive to the potential for abuse in private-placement adoptions, increasingly intensified the scrutiny required in all of its phases. Further thrust for these reforms was generated by the infamous Lisa Steinberg case.
The present statutes represent the confluence of three salutary streams of abiding concern: first, the protection of the child; second, the protection of the natural parent; and third, the protection and guarantee of certainty to adoptive parents.[1]
Our society is singularly solicitous and zealously protective of the unique bond existing between biological parent and child. The furtherance and safeguarding of this relationship is unwaveringly effectuated by statutes and decisional law. They mandate that an act as consequential as giving up one’s child for adoption not be undertaken without the most thorough ongoing assurance that it be done with full knowledge of permissible options, and that it not be the product of intimidation or other nefarious inducement.
This was not always the case rendering it instructive to briefly survey the establishment, and expansion of these protections. The requirement for a natural parent’s consent to an *537 adoption was contained in Domestic Relations Law § 111 without enumeration as to what it should contain.
Thereafter Domestic Relations Law § 115 "General provisions relating to private-placement adoptions,” was enacted by Laws of 1961 (ch 147). While that section mandated the execution of a consent, it failed to provide specification as to either its form or content. The only requirement was that it be duly acknowledged, or approved and certified in form sufficient to record a deed.
Domestic Relations Law § 115 (3) required that persons whose consent is required appear before a Judge while Domestic Relations Law § 115 (8)[2] gave the Judge discretion to dispense with such presence but only for good cause shown.
At the time that Domestic Relations Law § 115 was enacted, there was a manifest need to have a parent appear before a Judge. The dearth of decisional or statutory guidance presented a barren landscape devoid of sign posts and salutary bright lines setting forth the depth and breadth of the content of both judicial and extrajudicial consents.
This deficiency did not go unremedied.
In order to provide guidance for the requirement of consents in private-placement adoptions, the Legislature through Laws of 1972 (ch 639) added Domestic Relations Law § 115-b "Special provisions relating to consents in private-placement adoptions.” Although it referred to consents executed or acknowledged before a Judge, and other consents, it was not until the comprehensive amendment of this section by Laws of 1986 (ch 817) that the distinctions between judicial, and extrajudicial consents were prominently set forth.
This amendment sets forth with prolix specificity and detail the requirements of a consent. In addition, the legislation changed from 30 days after the commencement of the adoption proceeding to 45 days after its execution the time in which an extrajudicial consent had to be revoked.
While the 1972 enactment mandated, in general terms, that a Judge inform a parent of the consequences of his or her consent, pursuant to the provisions of Domestic Relations Law § 115-b, and the contents of an extrajudicial consent, it did so in a perfunctory manner.
*538 The 1986 amendment added far more details. It mandated that the consent, in conspicuous print of at least 18-point type, advise the natural parent of the right to legal representation of the parent’s own choosing; the right to obtain supportive counseling; and the right to have the court appoint an attorney pursuant to section 262 of the Family Court Act, inter alla.
It is also notable for the fact that this legislation, even though it was supported by the Office of Court Administration, rejected OCA’s recommendation that extrajudicial consents be eliminated. That support was predicated on OCA’s awareness that the bill was the legislative response to problems decried by the Court of Appeals in Matter of Daniel C. (63 NY2d 927) (in actuality the dissents in the Appellate Division and the Court of Appeals), and Matter of Sarah K. (66 NY2d 223). It provided that an extrajudicial consent recite the limited rights triggered by a timely revocation. It is also provided that a revocation must be received by the court within 45 days after its execution. This provided greater certainty than the previous requirement of 30 days after commencement of an adoption proceeding since that date could not be precisely fixed at the time the extrajudicial consent was executed. (See, mem of Office of Court Administration, 1986 McKinney’s Session Laws of NY, at 3394.)
Indeed, Professor Alan D. Scheinkman’s Practice Commentaries (McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C115-b:l, at 500) makes clear that the statute provides for two alternate forms of consents, judicial and extrajudicial.
Since 1961, the law has evolved significantly, affording natural parents an enhanced panoply of rights and protections.
Adoption proceedings commenced after September 1, 1986, offer a far broader spectrum of formalities and protections for a natural parent then were required in 1961, when good cause was required to be shown in order to dispense with the presence of a natural parent who had executed a consent.
The sheer quantum of information now required to be imparted assures that a natural parent signing such a consent has the right, and as a practical matter, the requirement to be represented by counsel. He or she will be fully apprised of their rights and option and the ramifications of its execution. This includes such information as the right to counsel of one’s *539 choosing, the right to seek counseling, and public assistance. A parent must also be advised that an extrajudicial consent becomes irrevocable unless a revocation is received by the court within 45 days after its execution, and the important fact that a timely revocation implicates not a return of the child, but a hearing on what course of action would be in the child’s best interests.
The court is well aware of the decision in Matter of Male D. (137 Misc 2d 1016 [Fam Ct, NY County 1987]). In that case, the court denied a request to dispense with the appearance of the natural parents for examination by the court.
Among the reasons that that request was denied was a well-founded doubt that the consent to the adoption was knowingly, intelligently and voluntarily given. The court declined to find that these prerequisites had been met because the parents lacked independent legal counsel, and had only received advice from the attorney for the adoptive parents.
The court understandably found inadequate a consent obtained under circumstances that failed to demonstrate that the natural parents had been advised, pursuant to the requirements of Domestic Relations Law § 115-b (2) (b), of their right to legal representation of their own choosing.
Male D. (supra) refers to the celebrated case of Matter of Anonymous (G.) (89 Misc 2d 514 [Sur Ct, NY County 1977]). In that case Surrogate Midonick required a natural parent to appear in court believing that the impartial advice of a Judge in court would be mandatory as to whether she needed counseling, legal or financial or other assistance or an adjournment.
The court declines to follow Matter of Male D. (supra) because its facts are clearly distinguishable. In the instant situation the natural mother, whose communications to the court revealed her to be a person of high intelligence, insight and awareness, was represented by independent counsel whose duty extended only to her. In addition, this court which ultimately granted the order of adoption in Male D. knows from a thorough review of the file that it arose in a far different factual setting.
In that case, there were apparent ethical breaches aimed at circumventing the requirements of the Interstate Compact on the Placement of Children (Social Services Law § 374-a [Compact]), and that of Connecticut law (Conn Gen Stats Annot *540 § 45-63), under which independent adoptive placements are illegal.[3]
In contrast, there is not one scintilla or implication of impropriety in this case involving a California resident whose child was brought to New York in full compliance with the Compact. Given the difficulty and expense involved in bringing her to New York the court believes that the flawless compliance with the enhanced requirements for an extrajudicial consent provides good cause to dispense with the presence of the natural mother for examination before this court.
The concerns expressed in Anonymous (G.) (supra) were all too real at the time they were articulated, but the Legislature has addressed those concerns. Moreover, as noted, infra, the Legislature declined to make appearance before a Judge the sole vehicle for executing a consent to adoption.
Recent analogous experience confirms the validity of this approach. For a brief period of time surrenders of children in foster care could only be executed before a Judge of the Family Court (L 1989, ch 722). This requirement proved so unsatisfactory as an exclusive vehicle that it was repealed the following year (L 1990, ch 479). In approving that bill, Governor Cuomo observed that: "[njatural parents are in many cases reluctant to appear before a judge and declare that they no longer want their child.” He also stated: "[t]he bill also ensures that a parent makes a knowing and voluntary decision about surrendering a foster care child for adoption.” He then made reference to requirements in extrajudicial surrender instruments nearly identical to those found in extrajudicial consents.[4]
While the appearance of a natural parent before a Judge remains the preferred procedure, strict compliance with statutory criteria can provide good cause to dispense with the natural parent’s presence. In the event that any doubt or question arises, however, a finding of good cause would be foreclosed.

. The Steinberg case spawned two notable statutory initiatives. The first, Domestic Relations Law § 115-c, "Temporary guardianship by adoptive parent”, was added by Laws of 1988 (ch 557). It requires that adoptive parents petition for temporary guardianship of an infant whose physical custody was transferred for the purpose of adoption. The second was contained in Laws of 1989 (ch 700). It requires that prior to commencing a private-placement adoption a person be certified as a qualified adoptive parent. It also sets forth the procedure to obtain such certification by adding Domestic Relations Law § 115-d, "Petition for certification”.

. Domestic Relations Law former § 115 (8) was renumbered subdivision (9) by Laws of 1989 (ch 700). For consistency’s sake, the former subdivision number will be utilized.

. Although the child in Matter of Male D. (137 Misc 2d 1016) was brought into New York without the requisite Compact approval, New York State’s Compact Administrator took the position that this failure should not alone constitute grounds for denial of the adoption. Since adoption was found to be in the child’s best interests after a hearing, the petition was granted.

. Approval mem, 1990 McKinney’s Session Laws of NY, at 2724.