[815 NYS2d 644]

In the Matter of MELINDA D. ADMINISTRATION FOR CHILDREN'S SERVICES et al., Respondents; CLAUDIA F., Appellant.

Second Department, May 9, 2006

**APPEARANCES OF COUNSEL**

*Catherine S. Bridge*, Staten Island, for appellant.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Francis F. Caputo* and *Karen M. Griffin* of counsel), for Administration for Children's Services, respondent.

*James M. Abramson*, New York City, for New Alternatives for Children, Inc., respondent.

*Steven Banks*, New York City (*Tamara A. Steckler* and *Judith Stern* of counsel), *Law Guardian.*

**OPINION OF THE COURT**

DILLON, J.

This appeal triggers the need for this Court to address, for the benefit of Family Courts, their practitioners, and placement agencies, the importance of adherence to the Interstate Compact on the Placement of Children (hereinafter ICPC), as embodied in Social Services Law § 374-a. Alleged violations of Social Services Law § 374-a have been raised on appeals in this Court with increasing frequency. Violations of the ICPC in this particular proceeding have been egregious.

The subject child, Melinda D., who was born on October 30, 2000, was placed in the care and custody of the Administration for Children's Services (hereinafter ACS) in February 2002 as a result of neglect allegations against her mother, the appellant, Claudia F. (hereinafter the mother). In June 2002 the mother gave birth to a son who is not the subject of this proceeding, but who was also placed in a separate foster care home soon after his birth.

At some point after the commencement of the neglect proceeding, ACS placed Melinda D. with New Alternatives for Children, Inc. (hereinafter NAC), a New York-authorized foster care agency. NAC placed the child in the nonkinship foster home of Marcelina S. (hereinafter the foster mother). By order of fact-finding and disposition dated May 16, 2003, the Family Court, inter alia, adjudicated Melinda D. a neglected child. As a disposition, the Family Court suspended judgment against the mother for 12 months pursuant to Family Ct Act § 1053. In January 2004 ACS changed its permanency goal from "return to parent" to "adoption." Upon learning of this change, the foster mother informed ACS of her desire to adopt the child and relocate to the State of Florida at the end of the 2003-2004 school year. In April 2004 ACS filed a petition to terminate the mother's parental rights based on the mother's failure to plan and her inability to care for her children because of mental retardation. By order dated June 10, 2004, the Family Court approved the modification of the permanency plan. Shortly thereafter, the mother, without the advice of counsel, executed a written consent allowing the child to accompany the foster mother to Florida from June 14, 2004, until July 29, 2004. In June 2004, after the child had arrived in Florida, ACS initiated a placement application pursuant to the ICPC.

Although the mother had consented to the child remaining in Florida only until July 29, 2004, neither the foster mother nor the child returned to New York. On July 30, 2004, after the child's return from Florida was overdue, ACS moved by order to show cause in the Family Court, Kings County, to suspend the mother's visits with the child. On August 4, 2004, the Family Court (Negron, Ref.), granted ACS the interim relief it sought, but also directed ACS to arrange and pay for a one-week visit by the mother with the child in Florida. This visit occurred in late August 2004.

On September 8, 2004, the mother's attorney wrote to ACS requesting that the child be returned to New York. On September 17, 2004, after receiving no response, the mother filed a petition for a writ of habeas corpus, seeking the child's return to New York and her placement in a New York foster home. On September 20, 2004, and September 30, 2004, the Family Court heard oral argument on the mother's petition and on ACS's motion for a suspension of visitation rights. The Family Court dismissed the habeas petition on the grounds that the mother lacked standing under CPLR 7002 (a), there was no illegal detention, ICPC approval was pending, New York law permitted the foster mother to relocate to another jurisdiction pending such approval, and placement of the subject child was proper. At that point in time, the mother's parental rights had not been terminated.

Significantly, and thereafter, the ICPC application for the child's placement with the foster mother was not approved by Florida authorities. As a consequence, the child has spent nearly two years with the foster mother in Florida, and continues to live there at this time, notwithstanding Florida's refusal to approve the foster mother as an appropriate placement resource.

At the oral argument of this appeal on April 10, 2006, this Court was advised that earlier in the day, the mother had executed a written surrender of a child in foster care and a judicial surrender by which she freely and legally surrendered her parental rights to and obligations regarding the child, in favor of an adoption by the foster mother, subject to conditions including, inter alia, minimum visitations and communication by the mother with the child.

■ In light of the mother's surrender of parental rights, we ordinarily would dismiss, as academic, the appeal from the order which dismissed the mother's habeas petition, reduced her visitation, and recognized as valid the out-of-state placement of

the child. However, an exception to the "mootness doctrine" is warranted here.

The mootness doctrine precludes courts from considering questions which, although once active, have become academic by the passage of time or by a change in circumstances (*see Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714 [1980]). If academic, an appeal is not to be determined unless it falls within the exception to the doctrine that permits courts to preserve for review important and recurring issues which, by virtue of their relatively brief existence, would otherwise be nonreviewable (*see Matter of Hearst Corp. v Clyne, supra* at 714; *Matter of McLaurin v New York State Bd. of Parole*, 27 AD3d 565 [2006]; *Matter of Marino v Travis*, 13 AD3d 453, 455 [2004]). The exception to the mootness doctrine requires the existence of three common factors: (1) a likelihood the issue will repeat, either between the same parties or among other members of the public, (2) an issue or phenomenon typically evading appellate review, and (3) a showing of significant or important questions not previously passed upon (*see Matter of Hearst Corp. v Clyne, supra* at 714-715).

All three factors excepting this appeal from the mootness doctrine are present here. Issues involving alleged noncompliance with the requirements of Social Services Law § 374-a have been raised on appeals in this Court with increasing frequency (*see e.g. Matter of Jamela B.*, 28 AD3d 478 [2006]; *Matter of Keanu Blue R.*, 292 AD2d 614 [2002]). Although in *Matter of Jamela B.*, the exception to the mootness doctrine was not triggered, the pattern of alleged ICPC violations has now become manifest. Moreover, ICPC violation issues have often evaded appellate disposition, as the experience of this Court is that cases involving contested out-of-state placements pursuant to the ICPC are frequently settled by the parties, and appeals are withdrawn before the appellate process is concluded. The noncompliance with Social Services Law § 374-a, whether urged by parties or placement agencies or ordered by courts, presents a significant issue where, as here, a child is prematurely placed with an out-of-state resource that the receiving state later decides is not suitable.

█ ACS argues that the mother lacked standing to bring a habeas corpus petition, as CPLR 7002 (a) limits habeas proceedings to illegal imprisonments within the state and to abuse proceedings in Family Court, which are inapplicable to the neglect proceedings at issue in this case. However, this argument,

as adopted by the Family Court, is based upon too narrow an interpretation of the relevant statutes that speak to standing.

Nearly 30 years ago, this Court noted that New York courts have repeatedly recognized the availability of a writ of habeas corpus as a proper means of determining the custody of children (*see Matter of Alan D.M. v Nassau County Dept. of Social Servs.*, 58 AD2d 111, 116 [1977]). At that time, while acknowledging the active participation of social service organizations, we stressed the continued importance of the traditional judicial function of parens patriae. In particular, we emphasized that the purpose of a habeas corpus proceeding is "to allow the courts to make an independent judgment of the child's welfare, and not to be bound by an agency determination" (*id.*).

While CPLR article 70 governs habeas corpus proceedings in Supreme Court, Family Ct Act § 651 applies to habeas corpus proceedings commenced in Family Court and has been held to encompass CPLR article 70 (*see Matter of Roland F. v Brezenoff*, 108 Misc 2d 133, 134 [1981]). Generally, Family Ct Act § 651 (b) provides that when a habeas corpus petition is initiated in the Family Court, that court has jurisdiction to make a determination with the "same powers possessed by the supreme court in addition to its own powers." Additionally, Domestic Relations Law § 70 provides, in pertinent part, that:

> "(a) Where a minor child is residing within this state, either parent may apply to the supreme court for a writ of habeas corpus to have such minor child brought before such court . . .

> "(b) Any order under this section which applies to rights of visitation with a child remanded or placed in the care of a person, official, agency or institution pursuant to article ten of the family court act . . . shall be enforceable pursuant to the provisions of part eight of article ten of such act . . . and other applicable provisions of law against any person or official having care and custody, or temporary care and custody, of such child."

These provisions, read collectively, provide noncustodial parents with standing to commence habeas corpus proceedings in the context of Family Court Act article 10 neglect proceedings (*cf. Matter of Norma Jean K.*, 81 AD2d 919 [1981]). Here, in particular, there is no question that the subject child was a resident of New York at the time the mother filed her habeas

corpus petition and was supposedly only visiting Florida with the foster mother, despite the fact that the foster mother chose not to return to New York. Moreover, while the Family Court determined that there was no illegal detention, there is a convincing argument to the contrary since the child was still in Florida in September 2004, after the mother's written consent permitting the child to stay with the foster mother in Florida through July 29, 2004, had expired. Clearly, the Family Court's interim suspension of the mother's visitation privileges in August 2004 did not cure the child's continued presence in Florida which was in contravention of the mother's limited consent and the ICPC. At no time did ACS seek an extension from either the mother or the Family Court. Moreover, we do not agree with ACS that the mother's habeas corpus proceeding was improper because full relief could have been obtained in other appropriate proceedings. Here, the mother was confronted with a situation where her child was not returned from Florida, as promised. A termination of parental rights proceeding was pending and her visitation rights had been suspended. She and her counsel properly concluded that reasons of practicality and necessity warranted the commencement of a habeas corpus proceeding (*see generally People ex rel. Alan PP. v Dunston*, 114 AD2d 678 [1985]).

Social Services Law § 374-a codifies the ICPC, to which the State of Florida also subscribes (*see* Fla Stat Ann § 409.401). A stated purpose of the ICPC is to ensure that a child will not be placed out-of-state with an inappropriate resource (*see Sinhogar v Parry*, 74 AD2d 204, 209 [1980], *mod on other grounds* 53 NY2d 424 [1981]; *Matter of Williams v Glass*, 245 AD2d 66, 67 [1997]). The state that is to receive a child must be provided with a full opportunity to ascertain the circumstances of a proposed placement within the receiving state (*see* Social Services Law § 374-a [1], art I [b]). Article III (b) of the ICPC further provides that the sending agency, in this instance ACS, shall furnish the receiving state with written notices, so that under article III (d), the receiving state can determine whether the proposed placement is consistent with the interests of the child. Indeed, the physical transfer of the child to the receiving state is not to occur at all absent full compliance with Social Services Law § 374-a, including the transmittal of the required written notices to the receiving state and the approval of the proposed placement by the receiving state (*see* Social Services Law § 374-a [1], art III [a], [b], [d]; *Matter of Tsapora Z.*, 195 AD2d 348, 349 [1993]).

Here, the subject child was permitted to vacation in Florida with her foster mother from June 14, 2004, to July 29, 2004, with the written consent of the biological mother procured without benefit of the advice of counsel. ACS did not initiate an ICPC application until after the child had been taken to Florida, in apparent violation of Social Services Law § 374-a. The mother, in consenting to the child's six-week vacation in Florida in June and July 2004, could not have anticipated that the child would not be returned to New York after July 29, 2004. Her visitation with the child was adversely affected by the order of the Family Court dated August 4, 2004, which granted ACS's application, made after the child was due back in New York, to suspend the mother's visitation with the child in Florida, and the order dated September 30, 2004, which ultimately reduced the mother's earlier visitation rights from weekly to monthly. To make matters worse, the receiving state, upon processing ACS's ICPC application, did not approve the subject child's placement with the foster mother.

Under these facts, the purpose of the ICPC, as embodied by Social Services Law § 374-a, has been thwarted. ACS knew of the foster mother's plan to permanently relocate to Florida as early as January 2004, and certainly in June of that year when its ICPC application was initiated. The child was physically transferred to Florida in June 2004, ostensibly for a limited vacation, with the mother's consent, and then not returned. As a result, the child has remained with the foster mother in Florida pursuant to a placement that Florida authorities never approved. This blatant violation of the ICPC would have provided a basis for voiding the child's placement in Florida on appeal (*see Matter of Shaida W.*, 85 NY2d 453, 460-461 [1995]; *Matter of Keanu Blue R., supra* at 615). Were this matter not rendered academic by the mother's execution of a judicial surrender of parental rights, this Court would have reversed the order appealed from, granted the habeas corpus petition, directed a return of the child from Florida to New York for placement in an appropriate foster home, and reinstated the mother's weekly visitation. However, in light of the mother's judicial surrender, this Court merely reverses the order insofar as appealed from, dismisses the petition and motion as academic, and affords no relief.

Social Services Law § 374-a is a protective statute designed to assure that out-of-state foster placements are made to appropriate resources. The curious circumstances surrounding the

procurement of the mother's consent to the child's initial travel to Florida, coupled with the Florida authorities' subsequent failure to approve the ICPC application, distinguish this matter from cases that have overlooked technical violations of Social Services Law § 374-a as in the best interests of children (*see Matter of Jon K.*, 141 Misc 2d 949 [1988]; *Matter of Male D.*, 137 Misc 2d 1016, 1023 [1987]). Well-intentioned efforts of law guardians, placement agencies, and courts to match children with suitable foster care, particularly for children whose placements are rendered more difficult by virtue of special needs, must nevertheless comply with the procedural mandates of Social Services Law § 374-a to fully protect the best interests of foster children departing the state.

Thus, the order is reversed insofar as appealed from, on the law, without costs or disbursements, and the petition and motion are dismissed as academic.

CRANE, J.P., GOLDSTEIN and LUCIANO, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, without costs or disbursements, and the petition and motion are dismissed as academic.