OPINION OF THE COURT
Fran L. Lubow, J.
Petitioners, Mr. and Mrs. E, residents of Florida, seek to adopt R. born in Montreal, Canada, in August 2004. Petitioners, through their attorney, have filed the instant adoption petition in Queens County Family Court on July 5, 2006. R.’s birth parents had executed extrajudicial surrenders relinquishing guardianship and custody of R. to the “agency” in Albany, New York, on March 7, 2005, conditioned upon the petitioners being the adoptive resource for R. Petitioner adoptive mother was given physical custody of R. that same date and she did immediately remove R. from New York to Florida where R. has since resided with the petitioners.
The agency submitted documents to the Interstate Compact on the Placement of Children (hereinafter ICPC) office in Albany. A copy of the “Interstate Compact Placement Request” form (form 100A) has been provided to the court as part of the adoption package. The request form was signed by the executive director of the agency on March 16, 2005 and thereafter by the New York State compact administrator on March 23, 2005. The request was received by the Florida Department of Children and Families on March 24, 2005. On May 27, 2005, written approval for the placement was granted by the Florida state compact administrator.
Upon a review of the written materials submitted to the court in support of the adoption proceeding, the court sought clarification of R.’s whereabouts between March 7, 2005 (the surrender date) and May 27, 2005 (the written ICPC approval date), a period of approximately 11 weeks. In response to the court’s request for clarification, the agency and the adoptive parents separately submitted written responses to the court. The agency represented that the adoptive father’s mother died in Florida on March 20, 2005 and the adoptive mother together with R. then returned to Florida for the funeral and to support her husband.[1] The agency states that it received oral approval from the Flor *808 ida ICPC office for R to remain in Florida until final ICPC approval was granted.[2]
The adoptive parents, in their written statement, acknowledged not waiting for ICPC approval, but instead in the “best interests of R” scheduled numerous medical appointments for her in Florida, commencing on March 15, 2005. Those numerous medical appointments and evaluations for R. were outlined spanning from March 15 to May 25, 2005. As stated by the petitioner mother, “Had I waited for the ICPC to clear, because of the mistakes and delay of the agency in New York, the baby would not have been able to receive proper medical care and would have missed nearly two months of therapy.”[3]
Thereafter the court requested memoranda of law from petitioners’ attorney and from the agency as to whether the illegality of removing R. from New York to Florida prior to ICPC approval might be cured and whether the court therefore would have the authority to entertain R.’s adoption. The court received a memorandum of law from petitioners’ attorney and thereafter appointed a law guardian to represent R.’s best interests in this adoption proceeding and to investigate, report and submit a memorandum of law on the ICPC violation. Subsequently, the court received a letter from the agency indicating it was not submitting its own memorandum of law but was “standing as part of the adopting family’s attorney’s Memorandum.” The court received the law guardian’s memorandum of law and its addendum on November 1, 2006.
The ICPC is an agreement among all 50 states, the District of Columbia and the United States Virgin Islands, establishing uniform legal and administrative procedures governing the interstate placement of children. Its purpose is to ensure that a suitable out-of-state placement is located for the subject child prior to the child being placed there. The text of this agreement has been ratified as uniform state law in all the above jurisdictions. In New York, this is codified in Social Services Law § 374-a. Pursuant to Social Services Law § 374-a (1), article I (a), “Each child requiring placement shall receive the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care.” Pursuant to Social Services Law § 374-a (1), article III *809 (d),
“The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child” (emphasis added).
The ICPC mandates that a child be placed in the receiving state only after the designated compact authorities in the receiving state have approved the placement. The statute by its express terms prohibits the transfer of a child from one state to another until the placement has been approved by both the sending and receiving states’ ICPC administrators.
R.’s placement in Florida was unauthorized and in violation of Social Services Law § 374-a. The physical transfer of a child should not occur at all absent full compliance with Social Services Law § 374-a, including the transmittal of the written notices to the receiving state and the approval of the proposed placement by the receiving state. An ICPC application was not even initiated by the agency until after the child had been taken to Florida in violation of Social Services Law § 374-a.
There is no explicit provision in the ICPC for oral approval. If in fact there was oral approval provided prior to the formal written approval, petitioners’ attorney and the agency have not provided proof of such to the court. Indeed, telephone contact between the court and the compact administrators of both New York and Florida has not convinced the court otherwise.
By removing the adoptive child from the jurisdiction of the State of New York immediately upon the extrajudicial surrender by the birth parents and even before the application for the ICPC was completed by the adoption agency for forwarding to the New York State ICPC compact administrator (much less awaiting receipt and approval of the receiving compact administrator in the State of Florida), they have blatantly violated Social Services Law § 374-a and the corresponding Florida statutes.
Although there has been “after the fact” compliance with the ICPC, this court must still address the violation of law that has occurred. In fact, the issue is so critical that the Appellate Division, Second Department, recently chose to address this issue in the context of a stale case in order to affirm strict compliance with the law by judges, attorneys and placement agencies. (See, *810 Matter of Melinda D., 31 AD3d 24 [2d Dept 2006]; cf. Matter of Jamela B., 28 AD3d 478 [2d Dept 2006].) In Melinda D. (31 AD3d 24, 31, 32 [2006]), the Second Department held, “Well-intentioned efforts of law guardians, placement agencies, and courts to match children with suitable foster care, particularly for children whose placements are rendered more difficult by virtue of special needs, must nevertheless comply with the procedural mandates of Social Services Law § 374-a to fully protect the best interests of foster children departing the state” and “the curious circumstances” of the instant matter distinguish this matter from cases that have overlooked technical violations of Social Services Law § 374-a as in the best interests of children (citing Matter of Jon K., 141 Misc 2d 949 [1988]; Matter of Male D., 137 Misc 2d 1016 [1987]).
Just prior to that, in May 2006, the Second Department reversed a family court’s order in a child protective proceeding releasing children from foster care to reside with relatives in another state prior to compliance with the ICPC. (See, Matter of Ryan R., 29 AD3d 806 [2d Dept 2006].) The Court of Appeals clearly indicated in Matter of Shaida W. (85 NY2d 453 [1995]) that New York law prohibits the placement of a child in a child protective proceeding with an out-of-state resource absent compliance with the ICPC. (See, e.g., Matter of Melinda D., supra; Matter of Ryan R., supra; Matter of Crystal A., 13 Misc 3d 235 [2006]; Matter of H./M. Children, 217 AD2d 164 [1st Dept 1995].)
Violations of the ICPC constitute violations of the law of both the sending and receiving state (Social Services Law § 374-a [1], art IV). Penalties for such violations include the suspension or revocation of the sending agency’s license or other legal authorization to place or care for children. Pursuant to article IV of the ICPC,
“The sending, bringing, or causing to be sent or brought into any receiving state of a child in violation of the terms of the compact shall constitute a violation of the laws respecting placement of children of both the state in which the sending agency is located or from which it sends or brings the child and of the receiving state. Such violation may be punished or subjected to penalty in either jurisdiction in accordance with its laws. In addition to liability for any such punishment or penalty, any such violation shall constitute full and sufficient grounds for the suspension or revocation of any license, permit, or other legal authorization held by the *811 sending agency which empowers or allows it to place, or care for children.” (Emphasis added.)
Violations of the ICPC can also lead to criminal sanction as outlined in Social Services Law § 389.
In an effort to deter future violations of adoption procedures, some courts have imposed financial sanctions against attorneys who fail to comply with adoption laws. (See, Matter of Carballo, 137 Misc 2d 553 [Fam Ct, Schenectady County 1987]; Matter of Calynn M. G., 137 Misc 2d 1005 [Sur Ct, Nassau County 1987].)
Other courts have advised referrals for criminal prosecution or attorney disciplinary action. (See, Matter of Male Infant A., 150 Misc 2d 893 [Fam Ct, NY County 1991].) In fact, Social Services Law § 389 designates such a violation as a misdemeanor.
Prior to the recent appellate court decisions, some courts had overlooked technical violations of the ICPC and approved adoptions based on the best interests of the child. (See, Matter of Baby Boy M.G., 135 Misc 2d 252 [Sur Ct, Nassau County 1987]; Matter of Baby E., 104 Misc 2d 185 [Fam Ct, NY County 1980].) Another trial court dismissed an adoption petition without prejudice where the child had been placed in New York in violation of the ICPC, finding no evidence of exigent circumstances needed to protect the child nor that it was in the child’s best interests to grant the adoption. The court directed compliance with the ICPC to proceed prior to an adoption being finalized. (Matter of Jon K., 141 Misc 2d 949 [Fam Ct, Kings County 1988].)
Mindful of the violation of the ICPC and appellate law, and analogous to Matter of Carballo and Matter of Calynn M. G. (supra), the court is striking the $1,000 fee[4] charged by the agency to the adoptive parents for the services rendered in connection with securing ICPC approval and the agency is directed to reimburse petitioners said amount forthwith. A signed affidavit from the agency director establishing compliance with this provision is a requirement and shall be filed with this court on or before the date of finalization.
Obviously, and notwithstanding recent appellate case law, this court, while respectful, must consider the unique facts and circumstances of this adoption proceeding. Ultimately ICPC approval was received. This court has insisted and received numer *812 ous updated medical reports and postplacement home studies which satisfy this court that the petitioners are devoted and responsible parents who have presented a concrete and thoroughly appropriate plan which will serve R.’s unique health, educational and emotional needs, and it is clearly in R.’s best interests that she be adopted by the petitioners. Accordingly the adoption petition shall be scheduled for finalization as soon as the adoptive mother and adoptive father and adoptive child may arrange to be present at Queens County Family Court for finalization.
[Portions of opinion omitted for purposes of publication.]

. This contradicts the affidavit of agency investigation dated March 16, 2006.

. This is not indicated on form 100A.

. R has significant medical issues.

. As per the agency affidavit of disclosure of fees the adoptive parents have paid a fee of $5,600 to the agency. Specifically, they paid a fee of $1,000 for “services connected with the Interstate Compact.”