Matter of Gerry B. (2007 NY Slip Op 50979(U))

[*1]

Matter of Gerry B.

2007 NY Slip Op 50979(U) [15 Misc 3d 1134(A)]

Decided on May 11, 2007

Family Court, Queens County

Hunt, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 11, 2007

Family Court, Queens County
In the Matter of Gerry B. A Person Alleged to be a Juvenile Delinquent, Respondent.
D-15641-04/05A

 Counsel: Michael Cardozo, Corporation Counsel (Danielle M. Boccio of counsel), New York
City, for Presentment Agency. The Legal Aid Society (Tamara Steckler and
Lisa Tuntigian of counsel), Law Guardian. Diane M. Deacon, Schenectady, for
New York State Office of Children and Family Services. Ronald Richter and GeorgeTaylor, New York City, New York City, for New York City Administration forChildren's Services.

John M. Hunt, J.
Respondent has moved to vacate this Court's order dated February 21, 2007 which, upon
his consent, extends his placement with the New York State Office of Children and Family
Services ("OCFS") as a juvenile delinquent for twelve months and directs that OCFS continue
respondent's present placement with Leake & Watts, an authorized agency within the meaning
of Social Services Law §371 (10).
In support of the motion to vacate the Court's order extending his placement with OCFS
for Leake & Watts, respondent contends that: (i) the Family Court was without jurisdiction to
extend placement; (ii) the proceedings were defective in that the Court did not have the authority
to reconvert the proceeding from a Person in Need of Supervision ("PINS") proceeding to a
juvenile delinquency proceeding; and (iii) even assuming that the Court had jurisdiction to
extend placement with OCFS that placement could not be extended beyond his 18th birthday
without his consent.
By petition filed pursuant to Family Court Act §310.1 on September 14, 2004, respondent
[*2]
was alleged to have committed acts which, were he an adult, would constitute the crimes of
Criminal Mischief in the Fourth Degree and Menacing in the Third Degree. Respondent's initial
appearance upon the juvenile delinquency petition occurred on September 27, 2004 (see, Fam.
Ct. Act §320.1-320.5) and on that same date respondent entered an admission to the count
charging him with committing an act which would constitute the crime of Criminal Mischief in
the Fourth Degree (Fam. Ct. Act §§321.2 [3], 321.3). Upon respondent's admission to that count
of the petition the Court directed the Department of Probation to conduct an investigation into
respondent's circumstances and prepare a written report to the Court (Fam. Ct. Act §351.1 [2]),
and the Court "temporarily" converted the juvenile delinquency petition to a PINS petition upon
the consents of the Presentment Agency and respondent (Fam. Ct. Act §311.4 [1]). Respondent
was then remanded to the custody of the New York City Administration for Children's Services
("ACS") as a PINS and the Commissioner of ACS was directed to arrange for a diagnostic
evaluation of the respondent (Fam. Ct. Act §§739 [a], 749 [b], 750).
A PINS dispositional hearing pursuant to article 7 was commenced before the Court on
November 5, 2004. The written report of the Department of Probation was received into evidence
along with a report from Leake & Watts, the authorized agency at which respondent had been
placed by ACS under the Court's remand order (see, Fam. Ct. Act §750 [2]). However, because
the Leake & Watts caseworker directly responsible for respondent's case was unavailable and
because the diagnostic evaluation of the respondent had not been completed, the hearing was
continued until December 10, 2004. When the hearing continued on December 10, 2004, the
Leake & Watts caseworker appeared and the caseworker advised the Court that the agency
planned to refer the respondent for appropriate services. Respondent was then released to the
[*3]
custody of his mother and the Department of Probation was requested to consider the service
plan proposed by Leake & Watts and to update its report in light of that plan if appropriate.
The dispositional hearing continued on January 20, 2005 and the Department of
Probation submitted an updated report. At that time, respondent's mother informed the Court that
respondent had disobeyed the curfew she had set for him and that he had come home at whatever
time he pleased, often in the early hours of the morning after having stayed out all night. Given
that respondent appeared to be beyond parental control, the Court vacated its prior order
substituting a PINS petition for the juvenile delinquency petition (Fam. Ct. Act §355.1) and
respondent was ordered detained by the Department of Juvenile Justice pending further
proceedings upon the reinstated juvenile delinquency petition on February 7, 2005. The Family
Court Mental Health Services Clinic was directed to conduct a psychological assessment of the
respondent (Fam. Ct. Act §351.1 [2]) and the Department of Probation and ACS were directed to
explore possible placement resources for the respondent.
The dispositional hearing recommenced on February 7, 2005 and the reports by the
Mental Health Services Clinic, ACS and the Department of Probation were introduced into
evidence. Based upon all of the evidence adduced at the hearing the Court concluded that the
respondent was a person in need of supervision, treatment or confinement and he was adjudicated
to be a juvenile delinquent (Fam. Ct. Act §352.1 [1]). Thereafter, upon the Court's own motion
and with the consent of the Law Guardian, a finding that respondent is a PINS was substituted
for a finding that he was a juvenile delinquent (Fam. Ct. Act §311.4 [2]; e.g., Matter of Devon
R., 278 AD2d 15, lv. denied 96 NY2d 707; Matter of Michael OO., 37 AD3d 390, 391), and
based upon the evidence adduced at the dispositional hearing respondent was placed in the
[*4]
custody of the Administration for Children's Services with a further direction that he be placed
with Leake & Watts for 12 months (Fam. Ct. Act §§754 [1] [c], 756 [a] [I], [ii]). The order
placing the respondent with ACS was based upon the Court's determination that he required
supervision and placement, that continuation of respondent in his own home would not be in his
best interests, that reasonable efforts had been made to maintain respondent in the community by
substituting a PINS petition for the juvenile delinquency petition and by ultimately releasing him
to his parent with the intention of providing him with appropriate community based services. In
addition, the Court also considered the needs and best interests of the respondent as well as the
need to protect the community (Matter of Jeremy L., 220 AD2d 908, 909, lv. denied 87 NY2d
807; Matter of Justin H., 278 AD2d 555, 556-557; Matter of Samantha T., 296 AD2d 869;
Matter of Ashlie B., 37 AD3d 997, 997-998; see, 22 NYCRR §205.67 [c]).
A petition seeking to extend respondent's placement and to review the ACS/Leake &
Watts permanency plan was filed on December 19, 2005 by ACS pursuant to Family Court Act
§756-a. In support of the petition to extend placement, ACS alleged that respondent has made
progress in the therapeutic program at Leake & Watts, that he attends school regularly and is
participating in psychotherapy. While the agency's goal was to eventually reunite respondent
with his mother, the agency was unable to presently effect that goal because the mother lacked
permanent housing. Thus, the agency's immediate plan was to implement family therapy and
to assist respondent's mother in obtaining suitable permanent housing.
During the pendency of the proceedings upon the extension of placement petition the
Court was advised that respondent had absconded from the Leake & Watts campus and the Court
issued a warrant for him (Fam. Ct. Act §738 [d]; 22 NYCRR §205.64), and by order dated
[*5]
January 25, 2006, respondent's placement was temporarily extended pending his appearance before the Court upon the warrant (Fam. Ct. Act §756-a [e]; see, Matter of Charles B., 209 AD2d
895, 896).[FN1] Respondent was returned upon the warrant on January 30, 2006, the warrant was
vacated and respondent's placement was then temporarily extended until February 16, 2006
pending further proceedings upon the petition. On February 16, 2006 a caseworker from Leake &
Watts advised the Court that respondent had again absconded from Leake & Watts RTC and
another warrant was issued for him.
When respondent next appeared before the Court on April 12, 2006 the parties consented
to the entry of an order extending placement with ACS for one year, effective February 6, 2006
(Matter of Bradley J., 23 AD3d 799), based upon the record before the Court which strongly
indicated that respondent required continued supervision and treatment and that a return to his
parent would not be in his best interests at this time (Fam. Ct. Act §756-a [d]; Matter of Kacey
H., 223 AD2d 876, 877; Matter of Chasity B., 28 AD3d 1191; Matter of Natalie B., 32 AD3d
1323, 1324). In addition, the Court determined that the agency's permanency plan (concurrent
plans for a return to parent or a transition to independent living) for the respondent was
reasonable and that the agency had exercised reasonable efforts to effectuate that plan (Fam. Ct.
Act §756-a [d] [i-iv]).
On June 28, 2006 the Leake & Watts caseworker appeared before the Court to report that
the respondent had again absconded from the facility and another warrant was issued for the
respondent. Respondent voluntarily appeared upon the warrant on August 30, 2006, the warrant
was vacated, and another judge directed that he return to placement with the agency. This Court
[*6]
received an updated status report from Leake & Watts on September 20, 2006 and the order of
placement continued. On November 17, 2006 the agency caseworker again appeared to request
a warrant for the respondent who had again absconded from the facility. The warrant was issued
and respondent was not returned upon the warrant until February 8, 2007. At that time, the Court
sua sponte vacated its February 2, 2005 order which substituted a PINS finding for an order
finding respondent to be a juvenile delinquent, and he was remanded to Elmhurst Hospital
Medical Center for a psychological evaluation in accordance with Family Court Act §251, and
the proceedings were continued until February 21, 2007.
On February 21, 2007, the Assistant Corporation Counsel, respondent, his mother and the
Law Guardian appeared before the Court. At that time, and upon the consent of the parties, an
order was entered pursuant to Family Court Act §353.3 which placed respondent in the custody
of the Office of Children and Family Services for twelve months as a juvenile delinquent, with
the specific directive that he be placed at Leake & Watts by OCFS (Fam. Ct. Act §353.3 [4];
e.g., Matter of Marc L., 206 AD2d 953; Matter of Quentin L., 231 AD2d 890, 891; In re
Christopher C., 298 AD2d 389).[FN2] As part of the placement order, the Court directed
that respondent cooperate with any drug treatment program offered by Leake & Watts and that
OCFS and Leake & Watts provide respondent with all necessary medical care, as required by
statute (see, Social Services Law §398).[FN3] Thereafter, respondent filed this motion for an order
[*7]
vacating the February 8, 2007 order substituting a juvenile delinquency finding for a PINS
finding and the subsequent order placing respondent with OCFS for Leake & Watts.
II
Respondent's argument that the Court lacked the authority to enter the February 8, 2007
order which resubstituted a juvenile delinquency finding for a PINS finding is without merit.
Article 3 of the Family Court Act clearly authorized the entry of the order in question as well as
the subsequent placement of respondent with OCFS for Leake & Watts.
The Court's authority to enter the various orders under review in this case is derived from
two complimentary sections of article 3 of the statute. The PINS substitution section of the
juvenile delinquency statute, Family Court Act §311.4, reads as follows:
1. At any time in the proceedings the court, upon motion of a respondent
or on its own motion, may, with the consent of the presentment agency and
with the consent of the respondent, substitute a petition alleging that the
respondent is in need of supervision for a petition alleging that the respondent
is a juvenile delinquent.
2. At the conclusion of the dispositional hearing the court, upon motion of the
respondent or its own motion, may in its discretion and with the consent of the
respondent, substitute a finding that the respondent is a person in need of
supervision for a finding that the respondent is a juvenile delinquent.
Family Court Act §311.4 (1) authorizes the court to substitute a petition alleging that the
respondent is a person in need of supervision for a petition alleging that he or she is a juvenile
delinquent. Such a substitution may be made at any stage of a juvenile delinquency petition upon
the consent of both the Presentment Agency and the respondent (Matter of Robert Z., 214 AD2d
[*8]
203, 204, lv. denied 87 NY2d 808; Matter of Theresa C., 222 AD2d 1107). The substitution of a
PINS petition for a juvenile delinquency petition allows the respondent to obtain "certain
advantages, including the preclusion of placement in a secure facility and the absence of a
finding that a crime was committed" (Matter of Robert Z., at 205). Family Court Act §311.4 (2),
on the other hand, authorizes the court to substitute a finding that a respondent is a person in
need of supervision for a finding that he or she is a juvenile delinquent. "[A] court that is
considering the dispositional component of a juvenile delinquency proceeding has the discretion
in an appropriate case to substitute a PINS finding for the finding of juvenile delinquency"
(Matter of Michael OO., 37 AD3d 1002, 1003).
While the procedures applicable to the Court's substitution authority under Family Court
Act §311.4 are somewhat dissimilar, whether the Court substitutes a PINS petition or a PINS
finding, the underlying intent is to relieve the juvenile of being stigmatized as a juvenile
delinquent and to allow the Court to address the child's needs under the civil provisions of article
7 rather than in the context of a quasi-criminal juvenile delinquency proceeding (Matter of
Robert Z., at 205; Matter of Michael OO., at 1003; Besharov and Sobie, Practice Commentaries,
McKinney's Cons Laws of NY, Book 29A, Fam Ct Act §311.4 at 141; see e.g., Matter of Devon
R., 278 AD2d 15, lv. denied 96 NY2d 707 [court erred in failing to substitute PINS finding in
case where 8 year old respondent committed sodomy and was in need of psychiatric treatment]).
The second relevant section of the statute, Family Court Act §355.1, reads as follows:
1. Upon a showing of a substantial change of circumstances, the court may on
its own motion or on motion of the respondent or his [or her] parent or person
responsible for his [or her] care:
(a) grant a new fact-finding or dispositional hearing;
[*9]
(b) stay execution of, set aside, modify, terminate or vacate any order issued in
the course of a proceeding under this article.
2. An order issued under section 353.3 may, upon a showing of a substantial
change of circumstances, be set aside, modified, vacated or terminated upon
motion of the commissioner of social services or [OCFS] with whom the respond-
ent has been placed.
3. If the court enters a new order of disposition under this section the date such
order expires shall not be later than the expiration of the original order.
Family Court Act §355.1 is a codification of the court's inherent authority to modify or
vacate its prior orders in a juvenile delinquency proceeding (Matter of Delfin A., 123 AD2d 318,
320), and the statute "reflect[s] the court's continuing jurisdiction and interest in a juvenile
delinquency proceeding" (Besharov and Sobie, Practice Commentaries, McKinney's Cons Laws
of NY, Book 29A, Family Court Act §355.1, at 496). Accordingly, pursuant to the statute, upon
a motion by or on behalf of a respondent, or upon the court's own motion, a new fact-finding or
dispositional hearing may be granted, and any prior order may be stayed, modified, terminated or
vacated upon a showing of a substantial change of circumstances (Matter of Eugene S., 200
AD2d 574, 575; Matter of Chaz H., 298 AD2d 983, 984; Matter of Barry H., 309 AD2d 1147, lv.
denied 1 NY3d 503; Matter of Eric S.D., 37 AD3d 1045, 1046; Matter of Gary B., 12 Misc 3d
1151 (A), 2006 NY Slip Op 50852(U); Matter of Lavon R., 13 Misc 3d 1237(A), 2006 NY Slip
Op 52153(U)).
Because the needs and circumstances of a particular juvenile delinquent may be unique,
there is no statutory definition of what constitutes a "substantial change of circumstances" for
purposes of Family Court Act §355.1. While every asserted change of circumstances will not be
substantial, a review of the cases reflects that this is a fact-specific determination which must be
made by the Court (see., Matter of Zachary T.D., 26 AD3d 801, 802 [Department of Social
[*10]
Services' contention that respondent's move across a county line was substantial change of
circumstances rejected]; Matter of Barry H., at 1147 [sudden availability of previously
unavailable witness who had exercised Fifth Amendment privilege not substantial change of
circumstances]; Matter of Lavon R., supra [no substantial change of circumstances where
respondent had absconded from placement and he required further sex offender treatment];
Matter of Gary B., supra [no substantial change of circumstances where respondent had only
completed half of period of probation supervision in case where he was found to have brought
weapon into public school]); cf. Matter of Jacqueline T., 182 AD2d 547 [court modified
placement order and enters order placing respondent on probation based on death of one parent
and illness of other as well as respondent's successful participation in intensive probation
supervision program during release while appeal was pending]; Matter of Chaz H., 298 AD2d
at 984 [substantial change of circumstances warranted change in placement from DSS to OCFS];
Matter of Eric S.D., 37 AD3d at 1046 [change of placement from DSS to OCFS where DSS had
exhausted its placement resources and respondent required more structured placement]).
Family Court Act §355.1 codifies the Family Court's inherent authority to modify or
vacate a prior order entered in the course of a proceeding (Matter of Delfin A., 123 AD2d at 320)
and nothing in the statute precludes the Court from exercising that authority on more than one
occasion in the course of a juvenile delinquency proceeding. Similarly, while Family Court Act
§311.4 (2) authorizes the Family Court to substitute a PINS petition for a juvenile delinquency
proceeding "[a]t any time in the proceedings" and Family Court Act §311.4 (2) authorizes the
Court to substitute a PINS finding for a juvenile delinquency finding "[a]t the conclusion of the dispositional hearing", nothing in that section purports to preclude multiple substitutions of
[*11]
petitions or findings in the course of a single proceeding where subsequent developments make
clear that the prior substitution was an improvident exercise of judicial discretion (People ex rel.
Kloogman v. Schall, 134 Misc 2d 231, 232).[FN4]
"Statutes are to be construed according to the ordinary meaning of their words . . . [and]
[w]here a statute describes the particular situations in which it is to apply and no qualifying
exception is added, an irrefutable inference must be drawn that what is omitted or not included
was intended to be omitted or excluded" (Matter of Jose R., 83 NY2d 388, 393-394 [citations
omitted]). Here, the statutory provisions in question provide clearly defined authority and
specific procedures governing the exercise of that authority. Nothing in the language of Family
Court Act §311.4 or §355.1 indicates any Legislative intention to prohibit multiple substitutions
of petitions or findings or multiple applications for relief under Family Court Act §355.1.[FN5] The
reading of these statutory provisions urged by the Law Guardian, unsupported as it is by the plain
language of these sections of the statute, would amount to an impermissible judicial rewriting of
the statute to obtain a desired result (Matter of Randy K., 77 NY2d 398, 404; Matter of Detrece
[*12]
H., 78 NY2d 107, 111; Matter of Briffel v. County of Nassau, 31 AD3d 79, 85, aff'd sub nom.
Matter of O'Shea v. Board of Assessors of Nassau County, 8 NY3d 249).
While the case relied upon by the Law Guardian, Matter of Tiahek Q. (178 AD2d 1020),
appears to prohibit a resubstitution of a juvenile delinquency finding for a PINS finding, such a
construction of the statute might very well discourage Family Court Judges from exercising their
discretion to substitute a PINS finding for a juvenile delinquency finding, since were such a
limitation to be read into the statute, the Court would thereafter be unable to take further action
under article 3 to safeguard the safety and well-being of a child or to protect the community, once
the initial substitution is made. There is simply no indication that the Legislature intended to
limit the Court's authority in such a manner (People ex rel. Kloogman v. Schall, supra).[FN6]
The Court has also considered whether the resubstitution of a juvenile delinquency
finding would violate the prohibition against double jeopardy as noted in the Practice
Commentaries (see, Besharov and Sobie, Practice Commentaries, McKinney's Cons Laws of
NY, Book 29A, Family Court Act §311.4, at 142). While the prohibition against double jeopardy
applies to juvenile delinquency proceedings (Fam. Ct. Act §303.2; Matter of Lionel F., 76 NY2d
747, cert. denied 498 US 923), the resubstitution of a juvenile delinquency finding does not
[*13]
constitute a second prosecution for the same crimes because the initial order substituting a PINS
finding is not an acquittal, final order or a judgment upon conviction (see, Fam. Ct. Act §1112;
People v. Biggs, 1 NY3d 225, 228-229), and because a substitution under Family Court Act
§311.4 (2) cannot occur unless the Court first adjudicates the child to be a juvenile delinquent
pursuant to Family Court Act §352.1 (Matter of Michael OO., at 1003). Thus, an order which
resubstitutes the juvenile delinquency finding merely restores respondent's status as an
adjudicated juvenile delinquent, which was the position he occupied immediately prior to the
Court's initial order of substitution.
A
On a more practical level, a construction of the statute in the manner suggested by the
Law Guardian could possibly preclude the Court from entering any orders which might provide
continuing services to the respondent who reached age 18 during the pendency of the motion.
Respondent has indicated his unwillingness to continue in the custody of the Office of
Children and Family Services as an adjudicated juvenile delinquent. Since respondent was not
placed in a restrictive setting after a finding that he committed a designated felony act and he
has reached the age of 18,[FN7] Family Court Act §355.3 (6) prohibits any extension of his placement
as a juvenile delinquent absent his consent.[FN8]
[*14]
Here, the reports filed with the Court on February 21, 2007 indicate that respondent is not
yet prepared for a release to the community and that he would benefit from the continued
services which would be provided by an extension of placement. While Elmhurst Hospital
reported that respondent does not presently suffer from any cognitive deficits or diagnosed
mental illness, the February 16, 2007 report by Leake & Watts states that the respondent, who
was initially admitted to that agency's PINS facility on September 28, 2004 and transferred to
the agency's juvenile delinquent facility on September 22, 2006, "is not cooperating with
services that have been recommended by the treatment team which could enhance his positive
adjustment and progress in the RTC program." Additionally, the agency reported that
respondent's mother had still not located suitable permanent housing and that she has a substance
abuse problem. Moreover, the agency reports that since respondent was placed in the juvenile
delinquent facility "he has not made any improvements . . . instead he has increased his use of
Marijuana/Alcohol and AWOLing. In the past five months, Gerry's maladaptive behavior has
worsen[ed] as evidenced by his [adult] criminal arrest, truancy at school, frequent AWOL and his
continued involvement with alcohol and drugs." Subsequent to the incident where respondent
was intoxicated and fell off of an overpass sustaining a broken vertebra in his neck, he was
returned to Leake & Watts and was released three times a week to attend occupational and
physical therapy and that when he returned to the agency he frequently returned in an intoxicated
state. Thus, the professional staff at Leake & Watts recommended that respondent be placed in
a more structured alcohol and substance abuse treatment program, based upon his recent failure
[*15]
to comply with an out-patient treatment program to which he was referred to by the agency.
Finally, in contrast to the report by Elmhurst Hospital, the September 13, 2006 report of
the psychiatric evaluation of the respondent conducted by Dr. Edward Halperin, a Board
Certified Adolescent Psychiatrist, states that respondent suffers from "Oppositional Defiant
Disorder and Personality Disorder, NOS with explosive features", and the psychiatrist
recommended that respondent be placed in alcohol and substance abuse treatment and that he
continue in placement in "a strict controlling atmosphere."
Given that respondent's consent was a prerequisite to the order extending his placement
as a juvenile delinquent and that consent may not be compelled, the Court must conclude that
respondent, who is now 18 years old, may revoke that consent, whether or not that is objectively
in his best interests. Thus, respondent's present refusal to continue in placement with OCFS
constitutes a substantial change of circumstances warranting judicial action pursuant to Family
Court Act §355.1.[FN9] Because respondent is clearly in need of continued supervision and treatment
and he is manifestly incapable of caring for himself at the present time, and given his expressed
willingness to continue his placement at Leake & Watts as a person in need of supervision in the
custody of ACS,[FN10] the Court will exercise its discretion and vacate the February 21, 2007 order
extending respondent's placement with OCFS for Leake & Watts, and the Court will substitute
a finding that respondent is a person in need of supervision for a finding of juvenile delinquency
pursuant to Family Court Act §311.4 (2). Upon that substitution of the PINS finding for the
[*16]
juvenile delinquency finding, the Court enters an order pursuant to Family Court Act §756-a
placing respondent with ACS for placement with Leake & Watts (PINS facility), upon his
consent (Fam. Ct. Act §756-a [f]), effective February 6, 2007.[FN11]
The permanency findings made by the Court in its February 21, 2007 order are hereby
continued and they are incorporated into the superseding order placing respondent with ACS for
Leake & Watts.
This constitutes the decision and order of the Court.
Notify the Law Guardian, the Presentment Agency, the Office of Children and Family
Services, the Administration for Children's Services and the Department of Probation.
E N T E R:
_________________________________
JOHN M. HUNT
Judge of the Family Court
Dated: Jamaica, New York
May ___, 2007

Footnotes

Footnote 1:The order temporarily extending respondent's placement with ACS ultimately proved
unnecessary as the initial period of placement extended until February 6, 2006.

Footnote 2:Family Court Act §353.3 (4) provides, insofar as relevant, that "[w]here the respondent is placed with [OCFS], the court may direct [OCFS] to place the respondent with an authorized
agency or class of authorized agencies" 

Footnote 3:The Court made a specific direction for medical attention because on November 26, 2006 while respondent was absent from the agency without permission, he fell off of a 25 foot
overpass and into a ditch sustaining a broken neck. Respondent was hospitalized for several weeks and he has been receiving physical therapy as an outpatient.

Footnote 4:In People ex rel. Kloogman v. Schall, the Family Court "reconverted" a PINS petition to a juvenile delinquency petition and respondent brought a writ of habeas corpus seeking his release from the custody of the Department of Juvenile Justice. In denying the writ, the Supreme
Court found that Family Court Act §311.4 is intended to afford flexibility in imposing an appropriate order of disposition, that an order of substitution under the statute was neither an adjudication nor a final order of disposition., and that the Family Court was empowered to vacate
the substitution and reinstate the delinquency petition or finding based upon respondent's behavior subsequent to the substitution (134 Misc 2d at 232).

Footnote 5:Indeed, the procedural statute governing applications for relief under Family Court Act
§355.1 contemplates that multiple applications for relief may be granted during the pendency of
a juvenile delinquency petition (Fam. Ct. Act §355.2 [5] [if motion pursuant to Family Court Act
§355.1 is denied, a motion requesting the same or similar relief cannot be filed for 90 days unless
order denying motion provides otherwise]).

Footnote 6:Family Court Act §720 (2) expressly prohibits the detention of a PINS respondent in a
secure detention facility (see, In re Naquan J., 284 AD2d 1, 4; In re Jasmine A., 284 AD2d 452, 453; In re Edwin G., 296 AD2d 7, 11; In re Jennifer G., 26 AD3d 437, 437-438). A construction of the statute which deprives the Court of the authority to vacate its prior order substituting a PINS petition or finding would leave the Court powerless to have a child held in a secure facility or placed with OCFS as a juvenile delinquent if appropriate, even where changed circumstances
demonstrate that a child requires confinement as well as supervision and treatment. This would be contrary to the primary purpose of article 3 of the Family Court Act which is to "empower the Family Court to intervene and positively impact the lives of troubled young people while protecting the public" (Matter of Robert J., 2 NY3d 339, 346; see, Matter of Jose R., 83 NY2d 388, 394; Matter of Benjamin L., 92 NY2d 660, 670).

Footnote 7:Where a respondent is found to have committed a designated felony act (Fam. Ct. Act
§301.2 [8]) and the child is placed in a restrictive setting pursuant to Family Court Act §353.5,
an extension of placement beyond the child's 18th birthday does not require the consent of the
child (In re Mickie PP., 279 AD2d 943).

Footnote 8:While an initial placement of an adjudicated juvenile delinquent may occur after the
child's 18th birthday (Matter of Robert J., 2 NY3d 339, 344 [citing Executive Law §507-a [2]), the statutory provision governing extensions of non-restrictive placements provides, insofar as relevant, that: "[s]uccessive extensions of placement under this section may be granted, but no placement may be made or continued beyond the respondent's eighteenth birthday without the child's consent and in no event past the child's twenty-first birthday."

Footnote 9:Counsel for OCFS observes that respondent is bound by the extension of placement order placing him with OCFS upon his consent "until such time [as] the Court vacates the
order made upon his consent."

Footnote 10:As indicated in the report by Dr. Halperin.

Footnote 11:While OCFS contends that the February 21, 2007 order which extended respondent's placement as a juvenile delinquent is procedurally defective, given the disposition of respondent's motion, this claim has been rendered academic (see, Matter of Hearst Corporation
v. Clyne, 50 NY2d 707, 713-714; Matter of Melinda D., 31 AD3d 24, 28).